**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**James Howard STEWART,
Defendant-Appellee.**

No. 75–1879.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 12, 1975.

Decided Feb. 6, 1976.

Certiorari Denied June 7, 1976.
See 96 S.Ct. 2629.

Eugene E. Siler, Jr., U. S. Atty., Lexington, Ky., Victor D. Stone, Atty., Crim. Div., Dept. of Justice, Washington, D. C., for plaintiff-appellant.

William Gary Crabtree, London, Ky. (Court-appointed CJA), for defendant-appellee.

Before PHILLIPS, Chief Judge, and MILLER and ENGEL, Circuit Judges.

PHILLIPS, Chief Judge.

The question presented on this appeal is whether the statutory provisions for an in-

creased sentence for dangerous special offenders, 18 U.S.C. § 3575(b) and (f), a part of Title X of the Organized Crime Control Act of 1970, 84 Stat. 922, 948–52, is unconstitutionally vague.

The District Court ruled that the statute is unconstitutional, on the ground that it is impermissively vague in both its application provisions and its sentencing provisions. The Government appeals, pursuant to 18 U.S.C. § 3576. We reverse.

On January 13, 1975, defendant-appellee, James Howard Stewart, was charged in the Eastern District of Kentucky with aiding and assisting the escape of a codefendant from the Bell County Jail, Pineville, Kentucky, while the latter was awaiting transfer to a federal penitentiary, in violation of 18 U.S.C. § 752(a).

On February 5, 1975, six days before the trial, the United States filed notice of its intention to proceed against Stewart under the dangerous special offender sentencing provisions of the statute. The notice alleged that Stewart was a dangerous special offender within the meaning of 18 U.S.C. § 3575(e)(1), the habitual offender category, setting out that he had been convicted previously and imprisoned for three felony offenses—auto theft, malicious cutting and manslaughter. It also charged that Stewart was more than 21 years of age (specifically, he was 25) and that less than five years had elapsed between his last release from imprisonment and the commission of the instant felony (specifically, only five months had elapsed). As additional grounds for believing that a period of confinement longer than the five year maximum term provided in the underlying statute was required in this case for the protection of the public, i. e., that Stewart was "dangerous" within the meaning of 18 U.S.C. § 3575(f), the Government proffered evidence to show that his propensity to act violently had not abated. The Government offered to prove that subsequent to the commission of the instant offense, Stewart had participated in five additional felony-type acts, including escape from state custody, armed robbery which involved a federal

firearms violation, and two unrelated gun violations. The Government also offered to prove that Stewart had a poor record of institutional adjustment, i. e., that law enforcement personnel considered him to be dangerous and violent and that it was believed he would not hesitate to kill. The complete text of the notice is made Appendix A to this opinion.

The trial of Stewart ended in a mistrial. On February 21, 1975, in lieu of a retrial, Stewart pleaded guilty to Count III of the indictment. As stated above, the notice of the Government to proceed under the dangerous special offender statute had been given to Stewart six days before the trial. The District Judge was not aware of this notice until after Stewart had entered his first guilty plea. On March 20, 1975, at the time of sentencing, Stewart stated that, when he entered his guilty plea, he did not understand that the 25 year maximum term provided in 18 U.S.C. § 3575 could be imposed upon him. He said that it had been his belief that the maximum enhancement of sentence to which he thought he was exposing himself was an additional five year term, the maximum punishment for the offense to which he was pleading guilty. After the court advised Stewart that the maximum term possible was 25 years, Stewart was permitted to withdraw his guilty plea. On the same day Stewart filed a motion to dismiss the Government's dangerous special offender notice, alleging, *inter alia,* that the term "dangerous" as used and defined in 18 U.S.C. § 3575(f) is unconstitutionally vague.

On April 15, 1975, Stewart moved to withdraw his plea of not guilty and, after being advised again by the court that the maximum possible sentence was a 25 year term, he entered another plea of guilty.

Before convening the special offender sentencing hearing required under 18 U.S.C. § 3575, at which the Government proposed to call approximately 25 witnesses to establish the allegations in its notice, the District Court set a hearing on Stewart's motion to dismiss.

Thereafter, in an unpublished order filed May 9, 1975, the District Court ruled that the dangerous special offender statute is unconstitutional, due to the fact that it is impermissibly vague in both its application provisions and its sentencing provisions,[1] and declined to sentence Stewart under that statute. However, on Stewart's guilty plea to the original offense, the court imposed the five year maximum term of imprisonment authorized by 18 U.S.C. § 752, such term to run consecutively to and independently of any other state or federal sentencing. The court declined Stewart's request for a concurrent sentence or the opportunity for immediate parole under 18 U.S.C. § 4208(a)(2), pointing out that he had "a most serious record."

### 1) The Statute

■ The dangerous special offender statute was enacted to provide more precise sentencing methods so as to make the sentence fit the particular offender before the court.

The relevant portions of the statute in question are as follows:

### § 3575. Increased sentence for dangerous special offenders

(a) Whenever an attorney charged with the prosecution of a defendant in a court of the United States for an alleged felony committed when the defendant was over the age of twenty-one years has reason to believe that the defendant is a dangerous special offender such attorney, a reasonable time before trial or acceptance by the court of a plea of guilty or nolo contendere, may sign and file with the court, and may amend, a notice (1) specifying that the defendant is a dangerous special offender who upon conviction for such felony is subject to the imposition of a sentence under subsection (b) of this section, and (2) setting out with particularity the reasons why such attorney believes the defendant to be a dangerous special offender. In no case shall the fact that the defendant is alleged to be a dangerous special offender be an issue upon the trial of such felony, be disclosed to the jury, or be disclosed before any plea of guilty or nolo contendere or verdict or finding of guilty to the presiding judge without the consent of the parties. If the court finds that the filing of the notice as a public record may prejudice fair consideration of a pending criminal matter, it may order the notice sealed and the notice shall not be subject to subpena or public inspection during the pendency of such criminal matter, except on order of the court, but shall be subject to inspection by the defendant alleged to be a dangerous special offender and his counsel.

(b) Upon any plea of guilty or nolo contendere or verdict or finding of guilty of the defendant of such felony, a hearing shall be held, before sentence is imposed, by

I. UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CRIMINAL 75–5

UNITED STATES OF AMERICA
PLAINTIFF
v.
JAMES HOWARD STEWART
DEFENDANT

ORDER

On May 7, 1975, at Lexington, came the plaintiff by John M. Compton, Assistant United States Attorney, the defendant in person and by his attorney Gary Crabtree.

The Court having previously taken under advisement the defendant's Motion to Dismiss the Notice of Dangerous Special Offender filed by the United States Attorney and having considered the matter, the Court finds that the Dangerous Special Offender Statute as embodied in 18 U.S.C. §§ 3575 to 3578 inclusive is unconstitutional, due to the fact that it is impermissively vague in both its application provisions and its sentencing provisions, and therefore declines to sentence the defendant James H. Stewart thereunder.

Pursuant to the Court's ruling and the Court having inquired of the defendant and his counsel if there were any objections to sentence being imposed on this date and no objection having been made, it was ORDERED that the previous order of this Court assigning this case for sentencing at London on July 21, 1975 at 9:30 A.M. be and it is hereby cancelled, set aside and held for naught.

the court sitting without a jury. The court shall fix a time for the hearing, and notice thereof shall be given to the defendant and the United States at least ten days prior thereto. The court shall permit the United States and counsel for the defendant, or the defendant if he is not represented by counsel, to inspect the presentence report sufficiently prior to the hearing as to afford a reasonable opportunity for verification. In extraordinary cases, the court may withhold material not relevant to a proper sentence, diagnostic opinion which might seriously disrupt a program of rehabilitation, any source of information obtained on a promise of confidentiality, and material previously disclosed in open court. A court withholding all or part of a presentence report shall inform the parties of its action and place in the record the reasons therefor. The court may require parties inspecting all or part of a presentence report to give notice of any part thereof intended to be controverted. In connection with the hearing, the defendant and the United States shall be entitled to assistance of counsel, compulsory process, and cross-examination of such witnesses as appear at the hearing. A duly authenticated copy of a former judgment or commitment shall be prima facie evidence of such former judgment or commitment. If it appears by a preponderance of the information, including information submitted during the trial of such felony and the sentencing hearing and so much of the presentence report as the court relies upon, that the defendant is a dangerous special offender, the court shall sentence the defendant to imprisonment for an appropriate term not to exceed twenty-five years and not disproportionate in severity to the maximum term otherwise authorized by law for such felony. Otherwise it shall sentence the defendant in accordance with the law prescribing penalties for such felony. The court shall place in the record its findings, including an identification of the information relied upon in making such findings, and its reasons for the sentence imposed.

\* \* \* \* \* \*

(e) A defendant is a special offender for purposes of this section if—

(1) the defendant has previously been convicted in courts of the United States, a State, the District of Columbia, the Commonwealth of Puerto Rico, a territory or possession of the United States, any political subdivision, or any department, agency, or instrumentality thereof for two or more offenses committed on occasions different from one another and from such felony and punishable in such courts by death or imprisonment in excess of one year, for one or more of such convictions the defendant has been imprisoned prior to the commission of such felony, and less than five years have elapsed between the commission of such felony and either the defendant's release, on parole or otherwise, from imprisonment for one such conviction or his commission of the last such previous offense or another offense punishable by death or imprisonment in excess of one year under applicable laws of the United States, a State, the District of Columbia, the Commonwealth of Puerto Rico, a territory or possession of the United States, any political subdivision, or any department, agency or instrumentality thereof; or

(2) the defendant committed such felony as part of a pattern of conduct which was criminal under applicable laws of any jurisdiction, which constituted a substantial source of his income, and in which he manifested special skill or expertise; or

(3) such felony was, or the defendant committed such felony in furtherance of, a conspiracy with three or more other persons to engage in a pattern of conduct criminal under applicable laws of any jurisdiction, and the defendant did, or agreed that he would, initiate, organize, plan, finance, direct, manage, or supervise all or part of such conspiracy or conduct, or give or receive a bribe or use force as all or part of such conduct.

A conviction shown on direct or collateral review or at the hearing to be invalid or for which the defendant has been pardoned on the ground of innocence shall be disregarded for purposes of paragraph (1) of this subsection. In support of findings under

paragraph (2) of this subsection, it may be shown that the defendant has had in his own name or under his control income or property not explained as derived from a source other than such conduct. For purposes of paragraph (2) of this subsection, a substantial source of income means a source of income which for any period of one year or more exceeds the minimum wage, determined on the basis of a forty-hour week and a fifty-week year, without reference to exceptions, under section 6(a)(1) of the Fair Labor Standards Act of 1938 (52 Stat. 1602, as amended 80 Stat. 838), and as hereafter amended, for an employee engaged in commerce or in the production of goods for commerce, and which for the same period exceeds fifty percent of the defendant's declared adjusted gross income under section 62 of the Internal Revenue Act of 1954 (68A Stat. 17, as amended 83 Stat. 655), and as hereafter amended. For purposes of paragraph (2) of this subsection, special skill or expertise in criminal conduct includes unusual knowledge, judgment or ability, including manual dexterity, facilitating the initiation, organizing, planning, financing, direction, management, supervision, execution or concealment of criminal conduct, the enlistment of accomplices in such conduct, the escape from detection or apprehension for such conduct, or the disposition of the fruits or proceeds of such conduct. For purposes of paragraphs (2) and (3) of this subsection, criminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.

(f) A defendant is dangerous for purposes of this section if a period of confinement longer than that provided for such felony is required for the protection of the public from further criminal conduct by the defendant.

(g) The time for taking an appeal from a conviction for which sentence is imposed after proceedings under this section shall be measured from imposition of the original sentence.

Stewart attacks the validity of the statute on two grounds:

(A) The provision in 18 U.S.C. § 3575(b) that "the court shall sentence the defendant to imprisonment for an appropriate term not to exceed twenty-five years and not disproportionate in severity to the maximum term otherwise authorized by law for such felony" is so unduly vague, over-broad and uncertain that the District Court could not properly sentence the defendant without denial of due process in violation of the fifth amendment; and

(B) That the term "dangerous" as used and defined in 18 U.S.C. § 3575(f), provides a standard which is so unduly vague, over-broad and uncertain that the District Court could not properly make a finding that a defendant is "dangerous" without a denial of due process, as guaranteed by the fifth amendment.

*2) The Maximum 25 Year Sentence*

Where the court finds that the defendant is a dangerous special offender, the statute provides that the court may thereupon sentence him to "an appropriate term not to exceed twenty-five years and *not disproportionate in severity to the maximum term otherwise authorized by law for such felony.*" (Emphasis added.)

The legislative history of this statute shows that the italicized phrase was not in the act as originally drafted. It was added on the advice of the American Bar Association while the bill, S. 30, was pending in Congress. See 2 U.S.Code Cong. & Admin.News pp. 4007, 4037 (1970). It appears to have been modeled upon the ABA's *Standards Relating to Sentencing Alternatives and Procedures* §§ 3.1(c)(i) and 3.3(a) (Approved Draft 1968). The purpose of the phrase in § 3575 (and the similar ABA Standards sections cited above) is to guarantee that no increased sentence will be so disproportionate to the offense actually charged and tried as to represent in effect a penalty for a different crime or crimes.

As additional evidence of Congressional concern about this same issue, Congress (for

the first time in federal criminal procedure) provided that sentences administered under § 3575 must be accompanied by detailed findings of fact by the sentencing judge and made subject to full appellate review, including the right to vacate or modify the increased sentence. The awesome power traditionally wielded by the District Judge alone is, for the first time in history, shared fully with appellate judges at the Court of Appeals and Supreme Court level. Thus the District Judge must administer a sentence which "is not disproportionate in severity to the maximum term" provided for the crime. If he fails to do so, the offender has full right of review by the Court of Appeals and the Supreme Court on the same standard.

The statutory provision for review is as follows:

### § 3576. Review of sentence

With respect to the imposition, correction, or reduction of a sentence after proceedings under section 3575 of this chapter, a review of the sentence on the record of the sentencing court may be taken by the defendant or the United States to a court of appeals. Any review of the sentence taken by the United States shall be taken at least five days before expiration of the time for taking a review of the sentence or appeal of the conviction by the defendant and shall be diligently prosecuted. The sentencing court may, with or without motion and notice, extend the time for taking a review of the sentence for a period not to exceed thirty days from the expiration of the time otherwise prescribed by law. The court shall not extend the time for taking a review of the sentence by the United States after the time has expired. A court extending the time for taking a review of the sentence by the United States shall extend the time for taking a review of the sentence or appeal of the conviction by the defendant for the same period. The taking of a review of the sentence by the United States shall be deemed the taking of a review of the sentence and an appeal of the conviction by the defendant. Review of the sentence shall include review of whether the procedure employed was lawful, the findings made were clearly erroneous, or the sentencing court's discretion was abused. The court of appeals on review of the sentence may, after considering the record, including the entire presentence report, information submitted during the trial of such felony and the sentencing hearing, and the findings and reasons of the sentencing court, affirm the sentence, impose or direct the imposition of any sentence which the sentencing court could originally have imposed, or remand for further sentencing proceedings and imposition of sentence, except that a sentence may be made more severe only on review of the sentence taken by the United States and after hearing. Failure of the United States to take a review of the imposition of the sentence shall, upon review taken by the United States of the correction or reduction of the sentence, foreclose imposition of a sentence more severe than that previously imposed. Any withdrawal or dismissal of review of the sentence taken by the United States shall foreclose imposition of a sentence more severe than that reviewed but shall not otherwise foreclose the review of the sentence or the appeal of the conviction. The court of appeals shall state in writing the reasons for its disposition of the review of the sentence. Any review of the sentence taken by the United States may be dismissed on a showing of abuse of the right of the United States to take such review.

It should be emphasized that the appeal provided by this language is not restricted to a review of abuse of the discretion of the District Judge. Although in an appellate proceeding the reviewing court would give serious consideration to the judgment of the trial court, the statutory power to vacate or modify is unrestricted.

The increased sentence provided for in § 3575 is determined in a manner analogous to but far less arbitrary than procedures employed in ordinary sentencing practices.

Thus in § 3575, quoted above, the statute requires notice to the defendant of the Government's intention to seek an "increased sentence" a reasonable time before trial of the crime. That notice must also set out "with particularity" why the Government believes the defendant is "a dangerous special offender." After the defendant has pled or been found guilty, there must be a specific 10-day notice of a hearing to be held "before sentence is imposed." The statute provides that the hearing will be "by the court without a jury." It provides for disclosure of the presentence report sufficiently prior to the hearing "to afford a reasonable time for verification." If "in extraordinary cases" the court decides to withhold some material in the presentence report (within specific narrow areas), the court must inform the parties and "place in the record the reasons therefor."

█ The statute expressly guarantees the defendant the right to assistance of counsel, compulsory process and cross-examination. As we have already noted, the statute requires findings of fact and full appeal. Thus, it fulfills the due process requirements of *Specht v. Patterson,* 386 U.S. 605, 610, 87 S.Ct. 1209, 1212, 18 L.Ed.2d 326, 330 (1967), where the Supreme Court held in a case involving sentencing under a Sex Offenders Act where the invocation of the Act constituted a new and distinct criminal charge:

> Due process, in other words, requires that he be present with counsel, have an opportunity to be heard, be confronted with witnesses against him, have the right to cross-examine, and to offer evidence of his own. And there must be findings adequate to make meaningful any appeal that is allowed.

It is to be emphasized that the present case differs from *Specht* in that the statute here involved does not create a new and distinct criminal charge.[2] Rather, the dangerous special offender criteria provide for an increase in the penalty for the offense itself. Under Title X, the conduct embraced within the criteria must be factually related to the felony for which sentence is imposed. The Supreme Court has indicated in numerous cases that such facts do not relate to a separate criminal charge. *Gryger v. Burke,* 334 U.S. 728, 732, 68 S.Ct. 1256, 92 L.Ed. 1683 (1948); *Graham v. West Virginia,* 224 U.S. 616, 625, 32 S.Ct. 583, 56 L.Ed. 917 (1912); *Moore v. Missouri,* 159 U.S. 673, 677, 16 S.Ct. 179, 40 L.Ed. 301 (1895). Title X involves, in *Specht's* language, "distinct issue," 386 U.S. at 610, 87 S.Ct. 1209, quoting *Graham,* 224 U.S. at 625, 32 S.Ct. 583, but it does not constitute a separate charge. Nevertheless, Title X provides the added safeguards of *Specht.*

Actually, the provisions of § 3575 provide far more due process protection for the convicted offender at his hearing on increased sentence than is required by statute in normal criminal prosecutions in either state or federal jurisdictions. In practice such rights are extended only rarely (or even sought to be employed) in normal criminal cases where the range of judicial sentencing discretion over the offender's life and freedom frequently is far greater than that provided by § 3575.

Federal law, as well as state laws, offers many examples of statutory grant of complete judicial discretion over sentences for criminal offenses ranging from probation to life imprisonment. Some of many possible examples follow:

1. Murder in second degree § 1111(b)—1 yr. to life.
2. Kidnapping § 1201—1 yr. to life.
3. Armed robbery of post office § 2114 —Probation or 25 yrs.
4. Armed robbery of bank § 2113(d)— Fine, probation or up to 25 years.
5. Murder during commission of bank robbery § 2113(e)—10 years—death.
6. Assault to commit murder or rape § 113(a)—Probation to 20 years.

Only circumstances of aggravation of the offense for which the conviction was obtained are before the court." S.Rep.No.91–617, 91st Cong., 1st Sess. (1969), p. 163.

---

**2.** The legislative history confirms this point: "The requirements of *Specht v. Patterson* . . are inapplicable, since no separate charge triggered by an independent offense is at issue.

7. Interference with foreign commerce by violence § 1364—Fine, probation to 20 years.

Section 3575 is not a typical habitual offender statute. Indeed, as the ABA's Advisory Committee on Sentencing Alternatives noted, the procedure for increased sentences recommended by the Committee and actually employed in § 3575 is a departure from that employed in most habitual offender statutes—both in relating the increased sentence to the last crime committed and in providing lesser and more flexible penalties than the life sentence which is frequently mandated.

The Advisory Committee would recommend, as it did in the cited commentary, a structure which limited the term available as an enhanced term by the nature of the new offense. A life sentence for petty larceny reflects a loss of proportion which the Advisory Committee would suggest is intolerable.

Subsection (a)(ii) deals with the maximum term which should be authorized by recidivist legislation. It parallels the corresponding provision in section 3.1, *supra*, by providing both that there should be judicial control over the maximum to be actually imposed and that in no event should a term in excess of twenty-five years be authorized on the grounds of recidivism. The reasons for both provisions are set forth in detail in comment *d* to section 3.1, *supra*.

It is worthy of particular note, however, that the recommendation of a twenty-five year limit on the maximum to be available for a repeat offender is a rejection of the limits provided by a significant number of existing statutes. Legislation in no less than twenty-three states authorizes or requires a life sentence for a recidivist. See Alaska Stat. § 12.55.050 (1966 Supp.) (fourth offense); Cal.Penal Code § 644 (1955) (third offense); Colo. Rev.Stat. § 39–13–1 (1964) (third offense); Del.Code Ann. tit. 11, § 3912 (1966 Supp.) (fourth offense); Fla.Stat. Ann. § 775.10 (1965) (fourth offense); Idaho Code Ann. § 19–2514 (1948) (third

offense); Ind.Ann.Stat. § 9–2207 (1956) (third offense); Ky.Rev.Stat.Ann. § 431.-190 (1963) (third offense); La.Rev.Stat. Ann. § 15.529.1 (1967) (fourth offense); Nev.Rev.Stat. § 207.010 (1965) (fourth offense); N.J.Stat.Ann. § 2A:85–8 (1966 Supp.) (fourth offense); N.M.Stat.Ann. § 40A–29–5 (1964) (fourth offense); N.Y. Penal Law § 70.10 (eff. Sept. 1, 1967) (third offense); Ohio Rev.Code Ann. § 2961.12 (1954) (third offense); Ore.Rev. Stat. § 168.085 (1963) (fourth offense); Pa.Stat.Ann. tit. 18, § 5108 (1963) (fourth offense); S.C.Code Ann. § 17.553.1 (1962) (fourth offense); S.D.Rev.Code § 13.0611 (1939) (fourth offense); Tenn.Code Ann. § 40–2801 (1955) (third offense); Tex.Penal Code art. 63 (1952) (third offense); Vt.Stat.Ann. tit. 13, § 11 (1958) (fourth offense); Wash.Rev.Code Ann. § 9.92.090 (1961) (third offense); W.Va.Code Ann. § 61–11–18 (1966) (third offense). The Maine provision authorizes imprisonment "for any term of years" upon conviction of a second felony. See Me.Rev.Stat. Ann. tit. 15, § 1742 (1965). Compare Va. Code Ann. § 53–296 (1967) (third offense).

Subsection (a)(iii) provides that the authorized minimum term should be structured in accordance with the provisions set forth in section 3.2, *supra*. This again significantly conflicts with existing limitations, particularly those cited above which deny any parole eligibility to an offender sentenced as a recidivist.

*d. Mandatory imposition*

The staff notes of the commission which recently revised the New York penal code reflected that the primary objection to the existing New York provisions is the mandatory feature, which requires the court to blind itself to all relevant sentencing criteria, such as the circumstances surrounding the crime for which sentence is to be imposed, the nature and circumstances of the previous crimes, and the history, character and condition of the offender.

As a matter of case law this appeal is governed by *Williams v. New York*, 337

U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). However, § 3575 goes many steps further in providing procedural due process than *Williams* required. The key policy statements of *Williams* were quoted with approbation in *Specht v. Patterson, supra* :

> " 'Under the practice of individualizing punishments, investigational techniques have been given an important role. Probation workers making reports of their investigations have not been trained to prosecute but to aid offenders. Their reports have been given a high value by conscientious judges who want to sentence persons on the best available information rather than on guesswork and inadequate information. To deprive sentencing judges of this kind of information would undermine modern penological procedural policies that have been cautiously adopted throughout the nation after careful consideration and experimentation. We must recognize that most of the information now relied upon by judges to guide them in the intelligent imposition of sentences would be unavailable if information were restricted to that given in open court by witnesses subject to cross-examination. And the modern probation report draws on information concerning every aspect of a defendant's life. The type and extent of this information make totally impractical if not impossible open court testimony with cross-examination. Such a procedure could endlessly delay criminal administration in a retrial of collateral issues.' " *Specht v. Patterson, supra*, at 606, 87 S.Ct. at 1210, 18 L.Ed.2d at 328.

Section 3575 is a new sentencing procedure. As has been demonstrated above, invocation of this "increased sentence" procedure is not a separate criminal charge. The fact-finding procedures spelled out in the statute (including finding of facts by preponderance of the evidence) are wholly legal. We reemphasize that they afford more protection to the defendant than is required by *Specht, supra*, and *Williams, supra*, or than is normally afforded now in most state and federal sentencing.

The increased sentence procedure of § 3575 is related directly to one of the major purposes of criminal law reform.

It is in the nature of our penal system to remove offenders from constructive influences at least frequently available in the normal community and to place them in almost exclusive 24-hour daily contact with selected groups of persons most criminally inclined. If this often leads, as many claim, to the failure of the penitentiary system to produce either "penitent" or rehabilitated citizens, it is nevertheless true that it serves the purpose of keeping dangerous offenders, who are likely to repeat violent offenses, from committing such crimes during their period of incarceration behind bars. Lawmakers, appropriately worried about violent crime, tend to set the maximums for all crimes at the level they think is appropriate for the worst of the criminals who may commit that offense. The results in both state and federal law are statutory sentencing provisions similar to the extreme examples of federal judicial sentencing discretion set forth earlier in this opinion.

Three of the organizations who have made intensive studies of this problem have come to the conclusion that some form of increased sentence for dangerous offenders is necessary in order to begin the process of reduction of prison use as to nondangerous offenders.

The American Bar Association assigned its study of this topic to a prestigious Advisory Committee headed by Judge Simon Sobeloff of the United States Court of Appeals for the Fourth Circuit. The Standards as approved began with this statement of general principles:

> "(d) It should be recognized that in many instances in this country the prison sentences which are now authorized, and sometimes required, are significantly higher than are needed in the vast majority of cases in order adequately to protect the interests of the public. * * * *Sentences of twenty-five years or longer should be reserved for particularly serious offenses or, under the circumstances set forth in sections 2.5(b) and 3.1(c) (spe-*

*cial term), for certain particularly dangerous offenses. For most offenses, on the other hand, the maximum authorized prison term ought not to exceed ten years except in unusual cases and normally should not exceed five years.*"[3] ABA Standards on Sentencing at 1. (Emphasis in original.)

The ABA's Advisory Committee addressed the question as follows:

[T]he Advisory Committee fails to see why the method of the criminal law as employed at trial must be carried over into the sentencing phase, or if it must, why the procedure for sentencing repeat or dangerous offenders is the only case where this must be so. No constitutional questions are raised in the normal sentencing case where the trial judge considers the contents of a presentence report without providing the defendant with direct confrontation of all who contributed background information. See *Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). And factual disputes which arise in the imposition of a normal term are resolved daily by the judge without the creation of any such difficulty.

If it can be assumed that there is no constitutional difficulty with the basic structure of a sentencing procedure which uses the presentence report and which proceeds less formally than does the hearing on the question of guilt, the issue can be considerably narrowed. Presently the judge is left completely at large in making the sentencing decision, although he is expected to act in a manner that is responsive to a factual picture of the defendant which is conveyed to him by this less formal procedure. The issue thus comes down to whether providing standards by way of findings to precede the imposition of a particularly serious sentence necessarily invokes a change in the required procedure. The Advisory Committee would agree with the conclu-

sion of the revisers of the Minnesota laws that the method of the criminal trial need not be invoked for that reason. See Minn.Stat.Ann. § 609.155 (1964) (Comments, at 148–49). It would indeed be ironic if procedural due process *required* the absence of legislative guidance in order for the sentencing proceeding to be informal. The Advisory Committee is confident that such a result need not follow. ABA Standards on Sentencing at 263–64.

The ABA's increased sentencing standards upon which § 3575 is obviously largely modeled are set forth in Appendix B to this opinion.

A pioneer work in this field was that of the Advisory Council of Judges of the National Council on Crime and Delinquency in its Model Sentencing Act. This Act, adopted by the Council and the NCCD in 1963, also provided an increased sentencing procedure for dangerous offenders, which is set forth in Appendix C to this opinion.

Even more recently the National Commission for Reform of the Federal Criminal Laws made an exhaustive study of federal sentencing and likewise provided a dangerous offender sentencing provision in its final report to the Congress. See Appendix D to this opinion.

The lawyers and judges who comprised all three of these bodies separately considered and rejected the constitutional arguments which are presented to us in this appeal.

### 3) The Definition of "dangerous"

Stewart further asserts that the term "dangerous" as used and defined in 18 U.S.C. § 3575(f) is unconstitutionally vague.

Commenting on the use of the term "dangerous" before the Senate Judiciary Committee on S. 30 (the Organized Crime Control Act), Milton G. Rector, director of the National Council on Crime and Delinquency, said:

---

**3.** The Advisory Committee originally recommended maximum prison terms for most offenses of five years.

The National Council on Crime and Delinquency, primarily through its Council of Judges, has spent a number of years in trying to see how we could more effectively define in law the matter of dangerousness, how dangerous to the community is the person who commits a crime, and to try to build into criminal law for the point of sentencing specific criteria which could be tested, but by which judges could, after convictions, with all the protections of due process . . . have clearly stated criteria upon which he could, if finding that the defendant were dangerous, give an extended term. The definitions of dangerousness in S. 30 are really, we believe, more precise than those in the Model Sentencing Act of the Council of Judges. We very strongly support this concept.[4]

The circumstances under which the statute was drafted thus demonstrate that its words were chosen with care. Indeed this fact was noted by the Supreme Court in *Iannelli v. United States*, 420 U.S. 770, 786, 95 S.Ct. 1284, 1294, 43 L.Ed.2d 616, 628 (1975), where in commenting on the enhanced sanctions of the instant statute and other provisions of the Organized Crime Control Act of 1970, the court said: "The content of the Act reflects the dedication with which the legislature pursued this purpose."

The term "dangerous," which the District Court found vague, is not a new concept in criminal law. As a matter of federal law, one of the findings a court must make when denying bail pursuant to 18 U.S.C. § 3148 is that the defendant will "pose a danger to any other person or to the community."

In *Russell v. United States*, 131 U.S.App. D.C. 44, 402 F.2d 185, 187 (1968), the court, in vacating an appeal bond, ruled that the appellants could be held without bail "for the reason that their release would present

danger to the community." See also *United States v. Nelson*, 346 F.Supp. 926, 927 (S.D.Fla.), aff'd 467 F.2d 944 (5th Cir. 1972), cert. den., 410 U.S. 956, 93 S.Ct. 1513, 36 L.Ed.2d 183 (1973); *Sas v. State of Maryland*, 295 F.Supp. 389 (D.C.Md.1969), affirmed sub nom. *Tippett v. Maryland*, 436 F.2d 1153, 1154–55 (4th Cir. 1971), cert. dismissed sub nom. *Murel v. Baltimore City Criminal Court*, 407 U.S. 355, 92 S.Ct. 2091, 32 L.Ed.2d 791 (1972).

### 4) The Issue of Vagueness

■ In holding the statute unconstitutional for vagueness, the District Court relied upon *United States v. Duardi*, 384 F.Supp. 874 (W.D.Mo.1974). The Court of Appeals of the Eighth Circuit affirmed *Duardi* on the grounds of insufficiency of the notice, but did not reach the issue of vagueness. *United States v. Duardi*, 529 F.2d 123 (No. 75–1354, Dec. 31, 1975). The Government relies upon *United States v. Holt*, 397 F.Supp. 1397 (N.D.Texas 1975), in which the validity of the statute was upheld.[5]

These two District Court opinions, reaching diametrically opposite conclusions, are the only reported decisions to which we are cited dealing with the precise question now before us. We reject the reasoning and conclusions of the District Court in *Duardi* that the statute is unconstitutional for vagueness.

It is important to emphasize that Title X does not make it a criminal offense to be "dangerous," as was the case of the New Jersey statute discussed in *Duardi*, which made it unlawful to be a "gangster." Rather, this statute is directed against criminals convicted—not of being "dangerous"—but of having violated a law of the United States.

In *United States v. Fisher*, 6 U.S. (2 Cranch) 358, 386, 2 L.Ed. 304 (1805), Chief

---

4. Hearings before the Subcommittee on Criminal Laws and Procedures of the Committee on the Judiciary, United States Senate, Bills Relating to Organized Crime Activities and Related Areas of Criminal Laws and Procedures. March 18, 19, 25, 26 and June 3, 4, 1969, at page 253, reprinted in S.Rep.No.91–617 at 100.

5. This case is now pending on appeal to the United States Court of Appeals for the Fifth Circuit.

Justice John Marshall stated: "It is undoubtedly a well-established principle in the exposition of statutes, that every part is to be considered, and intention of the legislature [is] to be extracted from the whole."

In construing subsections (b) and (f) of the statute here involved, we have considered the text of the Act as a whole, along with the legislative history. Congress had before it the experience of the states with enhanced terms for habitual criminals. Many state recidivist statutes provide a mandatory minimum sentence for habitual criminals. Congress undertook to improve upon State statutes by not providing for a mandatory minimum sentence and by prescribing standards for determining that the defendant is "dangerous" before a longer sentence can be imposed.

In *United States v. Mazurie*, 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L.Ed.2d 706, 713 (1975), the Supreme Court said "[i]t is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand."

In *Rose v. Locke*, 423 U.S. 48, 96 S.Ct. 243, 46 L.Ed.2d 185, 44 U.S.L.W. 3301, 18 Cr.L. 4071 (1975), the Supreme Court reversed the decision of this court reported at 514 F.2d 570 (6th Cir. 1975), in which we held that the Tennessee statute proscribing commission of a "crime against nature" was unconstitutionally vague.

See also the opinion announced by Chief Justice Warren in *United States v. Harriss*, 347 U.S. 612, 618, 74 S.Ct. 808, 98 L.Ed. 989 (1954).

It is, of course, accepted law that an act of Congress carries a presumption of constitutionality. *Flemming v. Nestor*, 363 U.S. 603, 617, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960); *Pittman v. Home Owners' Loan Corp.*, 308 U.S. 21, 32–33, 60 S.Ct. 15, 84 L.Ed. 11 (1939).

Also, it is well settled that the courts should favor that interpretation of a statute which serves to comply with the Constitution. *N.L.R.B. v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 30, 57 S.Ct. 615, 81 L.Ed.

893 (1937); *United States v. Shreveport Grain & Elevator Co.*, 287 U.S. 77, 82, 53 S.Ct. 42, 77 L.Ed. 175 (1932). Accordingly, when a statute is challenged for vagueness, a court must seek "an interpretation which supports the constitutionality of the legislation." *United States v. National Dairy Products*, 372 U.S. 29, 32, 83 S.Ct. 594, 598, 9 L.Ed.2d 561, 565 (1963). Our conclusion that the statute is not void for vagueness is in accord with the decision of the Supreme Court in *United States v. Powell*, 423 U.S. 87, 96 S.Ct. 316, 46 L.Ed.2d 228, 44 U.S.L.W. 4010 (Dec. 2, 1975).

The judgment of the District Court is reversed. The case is remanded for sentencing of James Howard Stewart under the dangerous special offender statute.

APPENDIX A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CRIMINAL No. 75–5

UNITED STATES OF AMERICA,
                                   Plaintiff,

vs.

WILLIE MITCHELL SIMPSON,
JAMES HOWARD STEWART,
BONNIE GREGORY,
                                 Defendants.

NOTICE OF SPECIAL DANGEROUS
OFFENDER

William D. Kirkland, Assistant U. S. Attorney, an attorney charged with the prosecution of Willie Mitchell Simpson and James Stewart herein, in the United States District Court for the Eastern District of Kentucky for alleged felonies, to wit, escape from federal custody and aiding and assisting escape from federal custody, which were committed on December 3, 1973, at a time when both were over the age of twenty-one years, has reason to believe that those defendants are dangerous special offenders within the meaning and definition of 18 U.S.C. § 3575 and does notify the Court as follows:

1. Willie Mitchell Simpson and James Stewart are dangerous special offenders who upon conviction for the above-stated felonies are subject to the imposition of a sentence under subsection of 18 U.S.C. § 3575(b).

2. James Stewart was born March 21, 1949.

3. Willie Mitchell Simpson was born October 20, 1942.

4. James Stewart is a special offender within the meaning of 18 U.S.C. § 3575(e)(1) in that he has been convicted of the following felony crimes on the dates and places shown and further was imprisoned as set out:

    (a) October 1, 1965—Auto theft—Harlan Circuit Court, Harlan County, Kentucky—5 years

    (b) November 3, 1967—Malicious Cutting—Oldham Circuit Court, Oldham County, Ky.—2 years

    (c) August 28, 1968—Manslaughter—Lyon Circuit Court Lyon County, Kentucky—5 years.

These three felony offenses were committed on occasions different from one another and on each occasion the defendant James Stewart was imprisoned. On the last two convictions set out above, James Stewart was in prison at the time he committed the acts which later resulted in his convictions.

The defendant James Stewart was released from imprisonment on the charge of (c) above on July 2, 1973, so less than five years elapsed between the release of Stewart and his commission of the instant felony charged in the indictment herein.

5. A period of confinement longer than that provided for such felony as set out in (1), to wit, five years, is required for the protection of the public from further criminal conduct by the defendant James Stewart.

6. The undersigned attorney believes the defendant James Stewart to be dangerous within the meaning of 18 U.S.C. § 3575(f) for the following particular reasons:

    (a) In addition to the three felony convictions set out in (4) above, the defendant James Stewart has been engaged in the following dangerous criminal conduct as set out below:

    June 10, 1965—Breaking and entering—No disposition

    Sept. 10, 1973—Armed Robbery—Still pending

    Dec. 3, 1973—Assisting Federal Escape by the use of a knife—Set for trial

    Feb. 20, 1974—Armed Robbery—Still pending

    Apr. 8, 1974—Felon in possession of firearms—Still pending

    Dec. 10, 1974—Attempted escape—Being investigated

    (b) The Deputy U. S. Marshals from the Eastern District of Kentucky who have dealt with James Stewart consider him dangerous and give special attention to his transportation and incarceration.

    (c) Captain James Cromer, Kentucky State Police, states that James Stewart is dangerous in that he is prone to physical violence while in the commission of crimes or while in the process of being apprehended.

    (d) Henry Cowan, Warden, Kentucky State Penitentiary, states that James Stewart is dangerous as evidenced by his violent record at both La Grange State Reformatory and Kentucky State Penitentiary. James Stewart violently killed a fellow prisoner by stabbing him 44 times while incarcerated at Kentucky State Penitentiary.

    (e) H. R. Patterson, Chief Records Officer, Kentucky State Penitentiary, states that he personally knows the defendant James Stewart and that his record of twenty institutional disciplinary charges which include stabbings, creating disturbances, fighting, and assault convince him that he is dangerous. Patterson further states that Stewart would not hesitate to kill.

    (f) On September 26, 1974, James Stewart effected an escape from state custody at Central State Hospital, Louisville, Kentucky, and was recaptured on October 20, 1974, when he was seen sitting in a car near

the Warden's home at the Kentucky State Penitentiary. He was armed with a sawed-off shotgun and a pistol. He had previously sought admission to the penitentiary as a visitor but was denied entrance since visiting hours had passed for the day.

\*　　\*　　\*　　\*　　\*　　\*

Eugene E. Siler, Jr.
United States Attorney

By: _____

William D. Kirkland
Assistant United States Attorney

### CERTIFICATE

I hereby certify that the foregoing Notice of Special Dangerous Offender was served by mailing a true copy to:

Hon. Robert E. Cato
Attorney at Law
202 Moberly Building
London, Kentucky 40741

### APPENDIX B

3.3 *Habitual offenders.*

(a) Sentences authorized under present habitual offender legislation should be revised, where necessary, to conform to the following standards:

(i) Any increased term which can be imposed because of prior criminality should be related in severity to the sentence otherwise provided for the new offense;

(ii) The sentencing court should be authorized to fix a maximum term at any point from the maximum otherwise applicable up to a legislatively prescribed limit. As an outside limit for extreme cases, twenty-five years ought to be the maximum authorized prison term.

(iii) The court should be authorized to fix a minimum term in accordance with the principles stated in section 3.2.

(b) Whether to sentence a particular offender to the normal term or to a special term on grounds of habitual criminality should be a matter for the discretion of the sentencing court, and should be determined at the time of sentencing. An additional term should only be permitted if the court finds that such a term is necessary in order to protect the public from further criminal conduct by the defendant, and in support of this finding also finds that:

(i) The offender has previously been convicted of two felonies committed on different occasions and the present offense is a third felony committed on an occasion different from the first two. A prior offense committed within another jurisdiction may be counted if it was punishable by confinement in excess of [one year]. A prior offense should not be counted if the offender has been pardoned on the ground of innocence, or if the conviction has been set aside in any post-conviction proceedings; and

(ii) Less than five years have elapsed between the commission of the present offense and either the commission of the last prior felony or the offender's release, on parole or otherwise, from a prison sentence or other commitment imposed as a result of a prior felony conviction; and

(iii) The offender was more than [21] years old at the time of the commission of the new offense.

### APPENDIX C

### ARTICLE III. SENTENCES FOR FELONIES

§ 5. Dangerous Offenders

Except for the crime of murder in the first degree, the court may sentence a defendant convicted of a felony to a term of commitment of thirty years, or to a lesser term, if it finds that because of the dangerousness of the defendant, such period of confined correctional treatment or custody is required for the protection of the public, and if it further finds, as provided in section 6, that one or more of the following grounds exist:

(a) The defendant is being sentenced for a felony in which he inflicted or attempted to inflict serious bodily harm, and the court finds that he is suffering from a severe personality disorder indicating a propensity

toward criminal activity. (b) The defendant is being sentenced for a crime which seriously endangered the life or safety of another, has been previously convicted of one or more felonies not related to the instant crime as a single criminal episode, and the court finds that he is suffering from a severe personality disorder indicating a propensity toward criminal activity. (c) The defendant is being sentenced for the crime of extortion, compulsory prostitution, selling or knowingly and unlawfully transporting narcotics, or other felony, committed as part of a continuing criminal activity in concert with one or more persons.

The findings required in this section shall be incorporated in the record.

### APPENDIX D

§ 3202. *Upper-Range Imprisonment for Dangerous Felons.*

(1) Authorization. The maximum term for a felony shall not be set at more than 20 years for a Class A felony, 10 years for a Class B felony or 5 years for a Class C felony unless, having regard to the nature and circumstances of the offense and the history and character of the defendant as it relates to that offense, the court is of the opinion that a term in excess of these limits is required for the protection of the public from further criminal conduct by the defendant because the defendant is a dangerous special offender.

(2) Definitions. A defendant is a dangerous special offender for purposes of this section if:

(a) he has previously been convicted of two or more felonies committed on occasions different from one another and from such felony and for one or more of such convictions he has been imprisoned prior to the commission of such felony, and less than five years have elapsed between the commission of such felony and either his release, on parole or otherwise, from imprisonment for one such conviction or his commission of the last such previous felony; or

(b) he committed such felony as part of a pattern of criminal conduct which constituted a substantial source of his income, and in which he manifested special skill or expertise; or

(c) his mental condition is abnormal, and makes him a serious danger to the safety of others, and he committed such felony as an instance of aggressive behaviour with heedless indifference to the consequences of such behavior. An offender shall not be found to be a dangerous special offender under this paragraph unless the court has obtained a report from the Bureau of Corrections under section 3004 which includes the results of a comprehensive psychiatric examination;

(d) such felony was, or he committed such felony in furtherance of, a conspiracy with three or more other persons to engage in a pattern of criminal conduct and he did, or agreed that he would, initiate, organize, plan, finance, direct, manage, or supervise all or part of such conspiracy or conduct, or give or receive a bribe or use force as all part of such conduct; or

(e) he manifested his special dangerousness by using a firearm or destructive device in the commission of the offense or flight therefrom.

A conviction shown on direct or collateral review or at the hearing to be invalid or for which the defendant has been pardoned on the ground of innocence shall be disregarded for purposes of paragraph (a). In support of findings under paragraph (b), it may be shown that the defendant has had in his own name or under his control income or property not explained as derived from a source other than such conduct. For purposes of paragraph (b), a substantial source of income means a source of income which for any period of one year or more exceeds the minimum wage, determined on the basis of a forty-hour week and a fifty-week year, without reference to exceptions, under section 6(a)(1) of the Fair Labor Standards Act of 1938 (52 Stat. 1602, as amended 80 Stat. 838), and as hereafter amended, for an employee engaged in commerce or in the production of goods for commerce, and

which for the same period exceeds fifty percent of the defendant's declared adjusted gross income under section 62 of the Internal Revenue Act of 1954 (68A Stat. 17, as amended 83 Stat. 655), and as hereafter amended. For purposes of paragraph (b), special skill or expertise in criminal conduct includes unusual knowledge, judgment or ability, including manual dexterity, facilitating the initiation, organizing, planning, financing, direction, management, supervision, execution or concealment of criminal conduct, the enlistment of accomplices in such conduct, the escape from detection or apprehension of such conduct, or the disposition of the fruits or proceeds of such conduct. For purposes of paragraphs (b) and (c), criminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commissions, or otherwise are interrelated by distinguishing characteristics and are not isolated events.

(3) Notice. Whenever an attorney charged with the prosecution of a defendant in a court of the United States for an alleged felony committed when the defendant was over the age of twenty-one years has reason to believe that the defendant is a dangerous special offender such attorney, a reasonable time before trial or acceptance by the court of a plea of guilty or nolo contendere, may sign and file with the court, and may amend, a notice specifying that the defendant is a dangerous special offender who upon conviction for such felony is subject to the imposition of a sentence under subsection (1), and setting out with particularily the reasons why such attorney believes the defendant to be a dangerous special offender. In no case shall the fact that the defendant is alleged to be a dangerous special offender be an issue upon the trial of such felony, be disclosed to the jury, or be disclosed before any plea of guilty or nolo contendere or verdict or finding of guilty to the presiding judge without the consent of the parties. If the court finds that the filing of the notice as a public record may prejudice fair consideration of a pending criminal matter, it may order the notice sealed and the notice shall not be subject to subpoena or public inspection during the pendency of such criminal matter, except on order of the court, but shall be subject to inspection by the defendant alleged to be a dangerous special offender and his counsel.

(4) Hearing. Upon any plea of guilty or nolo contendere or verdict or finding of guilty of the defendant of such felony, a hearing shall be held, before sentence is imposed, by the court sitting without a jury. Except in the most extraordinary cases, the court shall obtain both a presentence report and a report from the Bureau of Corrections under section 3004 before holding a hearing under this subsection. The court shall fix a time for the hearing, and notice thereof shall be given to the defendant and the United States at least ten days prior thereto. The court shall permit the United States and counsel for the defendant, or the defendant if he is not represented by counsel, to inspect the presentence report sufficiently prior to the hearing as to afford a reasonable opportunity for verification. In extraordinary cases, the court may withhold material not relevant to a proper sentence, diagnostic opinion which might seriously disrupt a program of rehabilitation, any source of information obtained on a promise of confidentiality, and material previously disclosed in open court. A court withholding all or part of a presentence report shall inform the parties of its action and place in the record the reasons therefor. The court may require parties inspecting all or part of a presentence report to give notice of any part thereof intended to be controverted. In connection with the hearing, the defendant and the United States shall be entitled to assistance of counsel, compulsory process, and cross-examination of such witnesses as appear at the hearing. A duly authenticated copy of a former judgment or commitment shall be prima facie evidence of such former judgment or commitment. If it appears by a preponderance of the information, including information submitted dur-

ing the trial of such felony and the sentencing hearing and so much of the presentence report as the court relies upon, that the defendant is a dangerous special offender, the court shall sentence the defendant to imprisonment for an appropriate term as specified in subsection (1). The court shall place in the record its findings including an identification of the information relied upon in making such findings, and its reasons for the sentence imposed.