**UNITED STATES of America, Plaintiff-Appellee,**

v.

**James INENDINO, Defendant-Appellant.**

**No. 78–2268.**

United States Court of Appeals, Seventh Circuit.

Argued May 21, 1979.

Decided July 13, 1979.

Rehearing Denied Aug. 20, 1979.

As Amended Sept. 6, 1979.

Certiorari Denied Oct. 29, 1979. See 100 S.Ct. 276.

---

Julius L. Echeles, Allan A. Ackerman, Chicago, Ill., for defendant-appellant.

Thomas P. Sullivan, U. S. Atty., J. Kenneth Lowrie, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before SPRECHER, Circuit Judge, PECK, Senior Circuit Judge,* and WOOD, Circuit Judge.

PER CURIAM.

In February 1978 a special grand jury returned a five count indictment against defendants James Inendino and Thomas McKillip. McKillip was charged in all five counts and Inendino was charged in count one, conspiracy in violation of 18 U.S.C. § 371, and count five, receiving and concealing stolen motor vehicles in interstate com-

merce in violation of 18 U.S.C. § 2313.[1] McKillip subsequently entered a plea of guilty. Inendino pleaded not guilty. After a five-day trial the jury found Inendino guilty of both offenses. In September 1978 the district court judge sentenced Inendino to 20 years imprisonment under 18 U.S.C. § 3575.

In this appeal the defendant advances two contentions: (1) the defendant was denied a fair trial because the prosecutor improperly questioned witnesses, offered irrelevant and prejudicial evidence, and commented improperly in the closing argument, and (2) the defendant was improperly sentenced under the dangerous special offender statute, 18 U.S.C. § 3575. Finding no merit to either of these arguments, we affirm.

## I. THE PROSECUTION'S CONDUCT

The defendant in his brief questions the following: (a) the introduction into evidence of statements made by Inendino's co-conspirator McKillip to Government witness Thomas Schremser, (b) the prosecutor's questioning of Government witnesses Schremser and Phebus, (c) evidence relating to the impeachment of Government witness Kenneth Barnes, (d) the evidence relating to trailer seals found on Barnes' premises in a wrecked tractor cab, (e) evidence relating to the "arrests" of McKillip and Schremser in McHenry County, Illinois, (f) the evidence relating to the keys found in McKillip's possession, and (g) the prosecutor's statement of personal knowledge in the rebuttal argument. Each is discussed in turn.

### A. The Evidence of Co-Conspirator McKillip's Statements

■ Defendant Inendino was accused in count one of conspiring with McKillip in the interstate transportation of stolen motor vehicles, the receipt and concealment of stolen motor vehicles in interstate commerce, and the interstate transportation of stolen

---

* Honorable John W. Peck, Senior Circuit Judge of the United States Court of Appeals for the Sixth Circuit, is sitting by designation.

1. The three vehicles stolen in March 1974 were a 1973 International Transtar Tractor, a 1973 White Tractor and a 1970 Obrecht Flatbed Trailer.

property. Schremser, a witness for the Government, testified that, before the 1973 White tractor was stolen by himself and McKillip, McKillip told him that "Jimmy [Inendino] was looking for a replacement for one of his tractors" and that "Jimmy would pay $500 for a replacement." Schremser also testified that when he and McKillip were locating a truck to steal, McKillip told him that they were finding a truck for Jimmy. The defendant claims, apparently, that these statements were hearsay deserving exclusion. Rule 801(d)(2)(E) of the Federal Rules of Evidence provides that "[a] statement is not hearsay if . . . a statement is offered against a party and is . . . a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy." We believe that "some reasonable basis" exists for concluding that both statements were made in furtherance of the conspiracy. *United States v. Mackey*, 571 F.2d 376, 383 (7th Cir. 1978). *See also United States v. Knippenberg*, 502 F.2d 1056, 1061 (7th Cir. 1974). The district court properly admitted the evidence.

**B. The Prosecutor's Questions to Government Witnesses Schremser and Phebus**

■ The defendant complains that the prosecutor continually proffered objectionable questions to Schremser. After Schremser testified that McKillip told him that Inendino owned the 1973 White truck until 1975 when the tractor was "cut up," the Government asked Schremser the reason McKillip gave for "chopping up" the truck. The witness answered in this colloquy:

A. He said that the FBI had been getting too close to their operation.

Q. To "their operation"?

A. Yes.

Q. Did he say to whom he was referring by "their operation"?

A. He meant himself and Jimmy.

The defendant objected and asked the district court to strike "[h]e meant himself and Jimmy" because the sentence was subjective. The district court sustained the defendant's objection to the words "he

meant." The line of questioning then ceased. We find nothing in the two questions above which warrants reversal. The defendant also claims that the prosecutor improperly questioned Government witness Thomas Phebus about the manner in which the witness dealt with Inendino and McKillip. Having examined the record we find that claim is frivolous.

**C. Evidence Relating to the Impeachment of Kenneth Barnes**

■ The Government called Barnes, former owner of a truck sales and service business, as a witness. During direct examination the prosecutor questioned Barnes about a conversation between him and FBI Special Agent Terry Keiser and asked, "Did you tell [the agent] that you purchased the cab and the chassis from G & G Leasing?" The witness answered, "No, I did not." The remainder of Barnes' testimony was evasive and incomplete. Next the Government called Special Agent Keiser who testified about his visit to the Barnes' garage and about a wrecked tractor cab found on the premises. During direct examination the prosecutor asked Keiser, "When you spoke with [Barnes] on [August 22] did he tell you where he got the cab from?" The witness answered, "Yes. He told me he purchased it from G & G Leasing." The defendant asserts that the admission of this testimony is "clearly" a reversible error. We disagree. Rule 607 of the Federal Rules of Evidence provides that "[t]he credibility of a witness may be attacked by any party, including the party calling him." Furthermore, Rule 613 of the Federal Rules of Evidence permits impeachment by the use of prior inconsistent statements. Barnes was evasive; the district court judge issued a cautionary instruction to the jury; and the testimony to which the defendant objects did not specifically mention Inendino.

**D. Evidence Relating to Trailer Seals Found on Barnes' Premises**

■ During direct examination Agent Keiser testified that when he visited the

Barnes lot he searched inside a wrecked tractor cab, similar to the stolen White tractor, and discovered two unbroken seals.[2] The seals were registered to "Jim Idino" from "Flash." Inendino argues that these seals should not have been admitted as evidence because they tended to show that he was involved in "other crimes"—"the theft of goods, wares or merchandise from loaded trailers." The seals were obviously offered for the purpose of connecting the defendant with the wrecked tractor. Showing that this tractor was connected with Inendino corroborated Schremser's testimony that the stolen 1973 White truck was a replacement. It is inconceivable that the jury could have inferred from the introduction of these seals that Inendino was involved in stealing from loaded trailers. In fact, Don Nega, distributor of the seals, testified that Inendino legitimately received the seals. Agent Keiser testified, furthermore, that the locked seals are used to protect a loaded trailer and that these seals were unbroken.

### E. Evidence Relating to the "Arrest" of McKillip and Schremser

■ The defendant claims that the "arrest" of McKillip and Schremser in McHenry County is prejudicial "evidence of other crimes." However, a close examination of the record questioned by the defendant reveals no statement about an arrest.[3] The evidence shows that at 11:30 p. m. in October 1974 Patrolman McKeating and his partner of the McHenry County Sheriff's office found a red semi-trailer International Transtar truck near the Friendly Equipment Company and subsequently found two men, McKillip and Schremser, near a Friendly Equipment building. Patrolman McKeating advised them that the business was closed. McKeating testified that later he found an open door on the north side of the building and observed "the two men go up to several trucks and open them and go inside and come back outside again."

From this testimony the jury may have surmised that witnesses McKillip and Schremser were engaged in some illegal activity, but we cannot say that the district court judge abused his discretion in admitting the evidence. The International Transtar driven by McKillip and Schremser was previously stolen from Fox Valley Rental and Leasing. Within a few days after this incident in McHenry County, Schremser had the truck repainted blue at Knight's Body Shop in Lyons, Illinois. The repainting job was paid for by a T & J Trucking company check. From Knight's testimony, moreover, the jury may have reasonably inferred that Inendino arranged the repainting. The evidence was relevant and material to the charges in the indictment.

### F. The Evidence Relating to the Ignition Keys Found in McKillip's Possession

■ Deputy Sheriff Charles Terrell testified that when he arrived at the Friendly Equipment Company that evening he found a red and white International Transtar tractor with a sign reading "T & J Trucking." Inside the tractor he found a set of ignition keys. The defendant challenges the admissibility of the keys, apparently, because he asserts that they are "evidence of other crimes." The defendant, however, failed to object to the admission of the keys. We note nonetheless that McKillip's possession of the tryout keys corroborates Schremser's earlier testimony that when he and McKillip stole the White tractor from Langway Express, McKillip gave him a ring of approximately 20 keys which Schremser used until one of the keys started the White tractor. The evidence was properly admitted.

2. Seals are used to protect a loaded trailer during shipment. The seal mechanism is a metal strip that is slipped through the latches of the trailer door and the locking bar and then locked.

3. Schremser testified earlier that, when he was a driver for T & J Trucking, the International Transtar truck was repainted once in March 1974 and again in October or November 1974, after "McKillip and I were arrested in McHenry County." No further details were mentioned and the defendant failed to register any objection.

### G. The Prosecutor's Statement of Personal Knowledge in the Rebuttal Argument

■ Inendino complains that the prosecutor stated his personal knowledge when in the rebuttal argument he commented, "Well, you and I, ladies and gentlemen, know who took the tractor to Phebus' garage. Phebus said he wasn't there when he did it." The defendant interrupted, the district court judge announced that he would rely on the jury's recollection of the evidence, and the prosecutor clarified his remark saying that he was referring to Schremser's testimony where the witness stated that he and McKillip drove the stolen White truck to Phebus' garage and that no one was present when he arrived. In these circumstances we find no prosecutorial misconduct as the prosecutor's rhetorical comment was properly based on Schremser's testimony.

### H. Summary

The defendant urges that the above examples of prosecutorial misconduct warrant reversal of his convictions. It is clear, however, that there was no misconduct and that, therefore, the defendant's cases, *see United States v. Meeker,* 558 F.2d 387 (7th Cir. 1977); *United States v. Lozano,* 511 F.2d 1 (7th Cir.), *cert. denied,* 423 U.S. 850, 96 S.Ct. 94, 46 L.Ed.2d 74 (1975), are inapplicable. The district court judge, furthermore, has broad discretion in relation to the admission of evidence and the defendant failed to show that the judge abused his discretion.

### II. THE DEFENDANT'S SENTENCE

The defendant launches a four-pronged attack upon his sentence imposed under the dangerous special offender statute, 18 U.S.C. § 3575, asserting that (a) provisions of the dangerous special offender statute are unconstitutional, (b) the district court erred in admitting hearsay testimony in the sentencing hearing, (c) there was an abuse of prosecutorial discretion, and (d) the prosecution engaged in "forum shopping."

■ Judge Decker found that Inendino was a special offender as a recidivist within 18 U.S.C. § 3575(e)(1) and based his finding upon court records and the defendant's own acknowledgment of his prior convictions. The judge stated that "I don't think there can be any question that the defendant qualified as a special offender." We agree. Section 3575(b) provides in pertinent part:

If it appears *by a preponderance of the information,* including information submitted during the trial of such felony and the sentencing hearing and so much of the presentence report as the court relies upon, that the defendant is a dangerous special offender, the court shall sentence the defendant to imprisonment for an appropriate term not to exceed twenty-five years and not disproportionate in severity to the maximum term otherwise authorized by law for such felony.

18 U.S.C. § 3575(b) (emphasis added). The defendant contends that Section 3575 is constitutionally infirm because the statute authorizes findings of fact "by [the] preponderance of the information," rather than by the constitutionally mandated standard of beyond a reasonable doubt. This section, however, does not create a separate criminal charge but instead provides for the enhancement of the penalty for the defendant's criminal conviction. Also, the courts of appeals have uniformly found that the proof of dangerousness by a preponderance of the information is constitutional. *United States v. Williamson,* 567 F.2d 610 (4th Cir. 1977); *United States v. Bowdach,* 561 F.2d 1160 (5th Cir. 1977); *United States v. Stewart,* 531 F.2d 326 (6th Cir.), *cert. denied,* 426 U.S. 922, 96 S.Ct. 2629, 49 L.Ed.2d 376 (1976). *See generally United States v. Neary,* 552 F.2d 1184 (7th Cir.), *cert. denied,* 434 U.S. 864, 98 S.Ct. 197, 54 L.Ed.2d 139 (1977).

■ The argument that the district court erred in admitting hearsay testimony in the sentencing hearing is without merit. In considering a sentence the trial judge may conduct a broad inquiry which is "largely unlimited either as to the kind of information he may consider, or the source from which it may come." *United States v. Tucker,* 404 U.S. 443, 446, 92 S.Ct. 589, 591,

30 L.Ed.2d 592 (1972); *United States v. Cardi*, 519 F.2d 309, 313 (7th Cir. 1975). The sentencing court under the dangerous special offender statute retains the same broad discretion as in the usual sentencing procedure. *United States v. Williamson*, 567 F.2d 610, 615 (4th Cir. 1977). *See also* 18 U.S.C. § 3577.

■■■■ Disposing of the remaining assertions, we need only say that Congress provided that the initial impetus for invocation of the dangerous special offender statute rests within the sound discretion of the prosecutor, 18 U.S.C. § 3575(a). The prosecutor, who in a petition detailed the facts upon which the decision was based, did not abuse his discretion. In a related attack the defendant complains that by pursuing the dangerous special offender petition in this case before Judge Decker and by abandoning the same kind of a petition in another case before Judge Grady the prosecution engaged in "forum shopping." The defendant raised no objection in the district court. Section 3575(f) provides that a defendant is dangerous if the maximum period of confinement provided for the defendant's felony conviction is insufficient to protect the public from further criminal activity by the defendant. In the case before Judge Grady, Inendino was convicted of ten counts of committing the crime of interstate transportation of forged securities in violation of 18 U.S.C. § 2314 and one count of conspiracy in violation of 18 U.S.C. § 371. For those crimes the defendant could have been imprisoned for 105 years.[4] In the present case Inendino was convicted of one count of conspiracy and one count of receiving and concealing stolen motor vehicles in interstate commerce. Here the defendant faced a maximum of 10 years in prison.[5] It is clear, therefore, that the prosecution had a sound reason for dismissing the petition in front of Judge Grady and pursuing the one in front of Judge Decker.

The defendant's convictions and sentence are affirmed.

AFFIRMED.

[4.] Inendino also faced a possible fine of $110,000.

[5.] The defendant also could have been fined $15,000.