**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**James T. SCHELL, Defendant-Appellant.**

**Nos. 80–2255, 80–2256.**

United States Court of Appeals,
Tenth Circuit.

Oct. 13, 1982.

Rehearing Denied Dec. 2, 1982.

Edward J. Nazar of Redmond, Redmond & O'Brien, Wichita, Kan., for defendant-appellant.

Jackie N. Williams, Asst. U.S. Atty., Wichita, Kan. (James P. Buchele, U.S. Atty., Wichita, Kan., with her on the brief), for plaintiff-appellee.

Before DOYLE, McKAY and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

James T. Schell appeals the trial court's judgment finding him a dangerous special offender within the meaning of 18 U.S.C. § 3575, and sentencing him to two consecutive ten year terms. On appeal the issues are (1) whether the trial court's findings were statutorily and constitutionally sufficient; (2) whether sentencing Schell as a dangerous special offender violated his Eighth Amendment right against cruel and unusual punishment; (3) whether the statute's definition of "dangerous" is unconstitutionally vague; and (4) whether using a preponderance of the evidence standard to determine if Schell is a dangerous special offender, as the statute authorizes, violated Schell's due process rights.

In October 1979 Schell escaped from the Southeast Regional Correctional Facility in Fort Scott, Kansas. He was later recaptured and charged with escape from prison, a violation of 18 U.S.C. § 751(a). Before trial, in July 1980, Schell again escaped, this time from the jail where he was confined awaiting trial. When Schell was recaptured he was charged with a second escape from prison. The judge consolidated the two escape cases for trial. Before trial the government filed a notice stating that it reasonably believed Schell was a dangerous special offender. *See* 18 U.S.C. § 3575(a). After Schell pleaded guilty to both escape

charges, the trial court held a hearing solely to determine whether Schell was a dangerous special offender.

Section 3575 requires a trial court to increase a defendant's sentence beyond the statutory limits of the felony he has committed if the court finds that the defendant is a "dangerous special offender." The trial court found that Schell's previous criminal record met the "special offender" requirements of section 3575(e)(1).[1] Based upon its examination of the presentence report and testimony presented by both sides, the court found that Schell should be confined for a period longer than that provided for the felony of escape in order to protect the public from his future criminal conduct; thus, he was a "dangerous" special offender.[2] The trial court then sentenced Schell to two consecutive ten year terms. Schell appeals his sentence, as authorized by 18 U.S.C. § 3576.

### I

■ Schell contends the trial court's findings were neither statutorily nor constitutionally sufficient. He first argues that because Congress enacted section 3575 in order to bring about stiffer sentences for participants in organized crime groups, section 3575 requires a finding that he is such a person. Because no evidence was presented linking him to organized crime, Schell argues the trial court's determination that he is a dangerous special offender violated his due process rights. However, although the primary objective of section 3575 was to combat organized crime, neither the legislative history, see H.R.Rep.No.

1549, 91st Cong., 2d Sess. (1970), *reprinted in* 1970 U.S.Code Cong. & Ad.News 4007–91, nor the language of the section limits its application to organized crime figures. *See United States v. Bailey*, 537 F.2d 845, 846–47 (5th Cir. 1976), *cert. denied*, 429 U.S. 1051, 97 S.Ct. 764, 50 L.Ed.2d 767 (1977).

■ Schell also contends that in determining whether he is dangerous to society, the trial court should have considered time remaining to be served on Schell's prior convictions. At the time the trial court found Schell to be a dangerous special offender, he had yet to serve a ten year term in federal prison for a bank robbery, a fifteen to thirty-five year term in Texas for armed robbery, a five to thirty-five year term in Texas for murder, and a fifteen year term in Arkansas for aggravated robbery. Schell argues that because these sentences might require him to serve ninety-five years in prison,[3] he cannot be considered to be "dangerous."

Section 3575(f) does not explicitly require a trial court to calculate whether a defendant's probable release is imminent enough to pose a danger to society. Any attempt to make such a calculation would ensnarl the court in the complexities and uncertainties of the sentencing and parole procedures of other jurisdictions. This consideration militates against reading such a requirement into the statute. We think a defendant's character and past criminal conduct are the essential factors the court must consider in determining whether a defendant is dangerous within the meaning of section 3575.

**1.** Section 3575(e)(1) provides that when a defendant is convicted of a felony, the trial court can find that the defendant is a special offender if he or she has previously been convicted

"for two or more offenses committed on occasions different from one another and from such felony and punishable in such courts by death or imprisonment in excess of one year, for one or more of such convictions the defendant has been imprisoned prior to the commission of such felony, and less than five years have elapsed between commission of such felony and either the defendant's release, on parole or otherwise, from imprisonment for one such conviction or his commis-

sion of the last such previous offense or another offense punishable by death or imprisonment in excess of one year . . . ."

**2.** Section 3575(f) provides that

"a defendant is dangerous for purposes of this section if a period of confinement longer than that provided for such felony is required for the protection of the public from further criminal conduct by the defendant."

**3.** Schell exaggerates his maximum prison time. Both Texas sentences run concurrently with the federal sentence.

■ Schell also contends that the court erred in relying on the same evidence—prior convictions—to find that he is both a special offender and dangerous. Schell argues that although his prior convictions are sufficient to justify finding him a special offender, additional evidence is necessary to find him dangerous. Although the fact of prior convictions alone may not support a finding of dangerousness, the court was entitled to rely on both the fact and the nature of Schell's prior convictions, together with other evidence of Schell's character and prior conduct. *United States v. Warme,* 572 F.2d 57, 62 (2d Cir.), *cert. denied,* 435 U.S. 1011, 98 S.Ct. 1885, 56 L.Ed.2d 393 (1978). In announcing its decision, the trial court referred to the nature of Schell's previous felony convictions and to the testimony of two women who helped him escape or accompanied him. The women testified to his use of a gun in one escape and to his commission of several robberies while in their company. The court found that these facts "show a pattern and history of violence and anti-social behavior on the part of the defendant and a patent lack of concern for the lives of others." R. III, 105.

## II

■ Schell contends that by sentencing him to serve two consecutive ten year terms, the trial court violated his Eighth Amendment right against cruel and unusual punishment. Schell appears to argue that the Eighth Amendment requires that before sentencing a defendant a trial court must consider the time the defendant is already scheduled to serve. Because he was already scheduled to serve up to ninety-five years, Schell argues that the additional sentence of twenty years was cruel and unusual punishment.

This argument is meritless. Taken to its extreme, it would require us to find that virtually any sentence, however short, becomes cruel and unusual punishment when the defendant was already scheduled to serve lengthy sentences for prior convictions. The Eighth Amendment does not prohibit a state from punishing defendants for the crimes they commit; the amendment prohibits a sentence only if it is grossly disproportionate to the severity of the crime. *Rummel v. Estelle,* 445 U.S. 263, 271, 100 S.Ct. 1133, 1137, 63 L.Ed.2d 382 (1980). In suggesting that "the length of the sentence actually imposed" for an undeniably serious crime "is purely a matter of legislative prerogative," *id.* at 274, 100 S.Ct. at 1139, the *Rummel* decision puts into question whether any sentence short of death for felony convictions of the sort involved here is cruel and unusual punishment. *Cf. Enmund v. Florida,* —— U.S. ——, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982) (death penalty unconstitutional applied to felony murder defendant who did not kill or intend to kill).

## III

■ Schell claims that section 3575(f)'s definition of "dangerous" is unconstitutionally vague. That Congress might have chosen more precise language does not render a statute unconstitutionally vague, *United States v. Powell,* 423 U.S. 87, 94, 96 S.Ct. 316, 320, 46 L.Ed.2d 228 (1975), as long as people of ordinary intelligence need not "guess at its meaning and differ as to its application," *Connally v. General Construction Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). In this case the issue is whether trial judges who must administer section 3575 can readily apply the concept of dangerousness. In bail and sentencing proceedings, trial judges routinely consider a defendant's propensity to engage in future criminal conduct and the potential danger a defendant poses to society. The concept of dangerousness as defined in section 3575 merely articulates considerations underlying any bail or sentencing decision. We therefore agree with the Fourth, Fifth, Sixth, and Seventh Circuits, which have held that "dangerous" is not unconstitutionally vague. *See United States v. Williamson,* 567 F.2d 610, 613 (4th Cir. 1977); *United States v. Bowdach,* 561 F.2d 1160, 1175 (5th Cir. 1977); *United States v. Neary,* 552 F.2d 1184, 1194 (7th Cir.), *cert. denied,* 434 U.S. 864, 98 S.Ct. 197, 54 L.Ed.2d 139 (1977); *United States v. Stewart,* 531 F.2d

326, 336 (6th Cir.), *cert. denied,* 426 U.S. 922, 96 S.Ct. 2629, 49 L.Ed.2d 376 (1976).

## IV

Finally, Schell alleges that a higher standard of proof than the "preponderance of the evidence" standard called for by section 3575(b) is necessary to protect his liberty interest under the Due Process Clause.

■ A standard of proof allocates the risk of error between the litigants and indicates the relative importance of the ultimate decision. *Addington v. Texas,* 441 U.S. 418, 423, 99 S.Ct. 1804, 1808, 60 L.Ed.2d 323 (1979). For example, the "proof beyond a reasonable doubt" standard implies that the party on whom that burden is imposed should bear almost the entire risk of error. *Id.* at 423–24, 99 S.Ct. at 1808. In contrast, the "preponderance of the evidence" standard indicates that the litigants should share equally the risk of error, *id.* at 423, 99 S.Ct. at 1808, because the interests at stake have roughly equal societal importance. *Santosky v. Kramer,* 455 U.S. 745, 787, 102 S.Ct. 1388, 1411–12, 71 L.Ed.2d 599 (1982) (Rehnquist, J., dissenting). Proof by "clear and convincing" evidence is an intermediate standard generally used in civil cases involving allegations of fraud or some other quasi-criminal wrongdoing, or when particularly important individual rights are involved. *Addington,* 441 U.S. at 424, 99 S.Ct. at 1808. Although it may be difficult to articulate the subtle differences between these standards of proof, and equally difficult to know how they ultimately affect decisionmaking, testing the evidence presented by a given standard of proof "is more than an empty semantic exercise." *Id.* at 425, 99 S.Ct. at 1809 (quoting *Tippett v. Maryland,* 436 F.2d 1153, 1166 (4th Cir. 1971) (Soboleff, J., concurring in part and dissenting in part), *cert. dismissed sub nom. Murel v. Baltimore City Criminal Court,* 407 U.S. 355, 92 S.Ct. 2091, 32 L.Ed.2d 791 (1972)). In cases involving individual rights, whether criminal or civil, the standard of proof reflects the value society places on that right. *Id.*

■ Much of the problem in determining what standard of proof is constitutionally required for sentencing pursuant to section 3575 derives from trying to characterize the "dangerous special offender" proceeding. If it is a proceeding that determines guilt or innocence under a separate criminal charge, we must require proof beyond a reasonable doubt. *See In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) ("proof beyond a reasonable doubt [required] of every fact necessary to constitute the crime with which [the defendant] is charged"). If it is a normal sentencing proceeding, we must uphold a preponderance standard. *See Gardner v. Florida,* 430 U.S. 349, 358 & n.9, 97 S.Ct. 1197, 1205 & n.9, 51 L.Ed.2d 393 (1977) (plurality opinion) (although sentencing process must satisfy due process requirements, it need not provide entire panoply of criminal trial procedural rights); *Williams v. New York,* 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). However, the "dangerous special offender" proceeding is neither of these precisely; rather it is a kind of halfway house between them. Like state recidivism statutes, *see Gryger v. Burke,* 334 U.S. 728, 732, 68 S.Ct. 1256, 1258, 92 L.Ed. 1683 (1948), section 3575 does not involve a separate criminal charge, but instead subjects a defendant to increased punishment for the underlying conviction. *United States v. Neary,* 552 F.2d 1184, 1194 (7th Cir.), *cert. denied,* 434 U.S. 864, 98 S.Ct. 197, 54 L.Ed.2d 139 (1977). Like normal sentencing proceedings, the "dangerous special offender" proceeding grants the trial court broad discretion to impose sentences within statutorily prescribed limits; but unlike normal sentencing proceedings, a section 3575 hearing requires an additional finding of fact before the court may subject defendants to longer sentences than otherwise authorized.

In several ways section 3575 is similar to the Colorado Sex Offenders Act found unconstitutional in *Specht v. Patterson,* 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967). That statute allowed the trial court to sentence a defendant who committed a sex offense to a harsher term than otherwise would be authorized for the underlying

crime. Before doing so, the trial court had to make a new finding of fact—not an ingredient of the offense charged—that on the basis of a written psychiatric report the defendant posed a "threat of bodily harm to members of the public, or [was] an habitual offender and mentally ill." Pursuant to the Act, Specht, who had been convicted of a sex crime carrying a maximum ten year sentence, was sentenced to an indefinite term of one day to life imprisonment. On appeal he argued that the Sex Offenders Act denied him due process because it allowed the trial court to make its findings on the basis of undisclosed hearsay evidence and did not allow the defendant to cross-examine adverse witnesses or present his own evidence.

The Supreme Court held that the Sex Offenders Act violated due process. It reasoned that, unlike normal sentencing statutes, the Act did not make commission of a specified crime the basis for sentencing, but instead made one conviction the basis for commencing another proceeding to make a new finding of fact and thereby enhance criminal punishment. *Id.* at 608, 87 S.Ct. at 1211. The Court concluded that due process required the defendant to be "present with counsel, have an opportunity to be heard, be confronted with witnesses against him, have the right to cross-examine, and to offer evidence of his own." *Id.* at 610, 87 S.Ct. at 1212.

The *Specht* Court did not address what standard of proof due process required, but it did quote from and express agreement with a Third Circuit decision that, in considering a similar statute, stated:

"It is a separate criminal proceeding which may be invoked after conviction of one of the specified crimes. Petitioner therefore was entitled to a full judicial hearing before the magnified sentence was imposed. At such a hearing the requirements of due process cannot be satisfied by partial or niggardly procedural protections. *A defendant in such a proceeding is entitled to the full panoply of the relevant protections which due process guarantees in state criminal proceed-*

*ings. He must be afforded all those safeguards which are fundamental rights and essential to a fair trial,* including the right to confront and cross-examine the witnesses against him."

386 U.S. at 609–10, 87 S.Ct. at 1212 (quoting *United States ex rel. Gerchman v. Maroney,* 355 F.2d 302, 312 (3d Cir. 1966) (emphasis added)). Several courts have focused upon that quotation and its "full panoply" language in considering whether the Due Process Clause requires a higher standard of proof than the preponderance test set out in section 3575(b). *United States v. Bowdach,* 561 F.2d 1160, 1172–75 (5th Cir. 1977); *United States v. Stewart,* 531 F.2d 326, 332–34 (6th Cir.), *cert. denied,* 426 U.S. 922, 96 S.Ct. 2629, 49 L.Ed.2d 376 (1976); *United States v. Inendino,* 463 F.Supp. 252, 256–58 (N.D.Ill.1978), *aff'd,* 604 F.2d 458, 459 (7th Cir.), *cert. denied,* 444 U.S. 932, 100 S.Ct. 276, 62 L.Ed.2d 190 (1979); *United States v. Duardi,* 384 F.Supp. 874, 882–83 (W.D.Mo. 1974), *aff'd on other grounds,* 529 F.2d 123 (8th Cir. 1975). All but *Duardi* upheld the preponderance standard. We agree with those courts that have said the *Specht* Court's quotation of the Third Circuit language should not conclusively determine this important issue because the issue was not before that Court. *See Hollis v. Smith,* 571 F.2d 685, 690 (2d Cir. 1978); *United States v. Bowdach,* 561 F.2d 1160, 1173–74 (5th Cir. 1977); Note, *The Constitutionality of Statutes Permitting Increased Sentences for Habitual or Dangerous Criminals,* 89 Harv.L.Rev. 356, 367–68 (1975).

■ *Specht* certainly stands for the proposition that statutes like section 3575 must provide greater procedural protections than those normally afforded defendants in sentencing proceedings. Section 3575 guarantees to a defendant the right to a hearing, to assistance of counsel, to compulsory process, to cross-examination of adverse witnesses, to findings of fact, and to appeal of an adverse decision—every procedure expressly required by *Specht.* If we were to hold that the "full panoply" of procedural rights applicable to criminal trials must be available in section 3575 hearings, we would have to permit the defendant to have a

jury, require a "beyond a reasonable doubt" standard of proof for all essential facts, and exclude hearsay—including that found in presentence reports which the statute permits the judge to utilize. *See In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). However, we do not believe that much is required.

First, determining what process is due depends on a balancing of the interests involved. *Addington*, 441 U.S. at 425, 99 S.Ct. at 1809. Significant interests lie on both sides. Even at regular sentencing proceedings, a defendant, although he has no right to a particular sentence, does have "a legitimate interest in the character of the procedure which leads to the imposition of sentence." *Gardner v. Florida*, 430 U.S. 349, 358, 97 S.Ct. 1197, 1205, 51 L.Ed.2d 393 (1977). Schell's interest in the nature of the procedures at the dangerous special offender hearing is greater than it would be at normal sentencing proceedings because the dangerous special offender status brings an increased sentence beyond the statutory maximum for the underlying felony and may hinder his ability to gain parole. *See United States v. Fatico*, 458 F.Supp. 388, 401 (E.D.N.Y.1978), *aff'd*, 603 F.2d 1053 (2d Cir. 1979), *cert. denied*, 444 U.S. 1073, 100 S.Ct. 1018, 62 L.Ed.2d 755 (1980); *cf. Holmes v. United States Board of Parole*, 541 F.2d 1243, 1251 (7th Cir. 1976) (prison board's classification as special offender affects a prisoner's prospects for parole); *Cardaropoli v. Norton*, 523 F.2d 990, 994 (2d Cir. 1975) (same). The government, however, also has legitimate interests in protecting society from an individual who is likely to engage in further criminal conduct—through incapacitation of the offender—and in deterring others like him.

Second, the function of the trial court in a section 3575 proceeding is quite similar to its function in ordinary sentencing decisions. The wider range of punishment than normally would apply to the underlying felony conviction becomes available only when

notice has been given by the government before trial. 18 U.S.C. § 3575(a). Then, after trial or acceptance of a plea, the judge must find certain historical facts about defendant's past record that are easily verifiable: that defendant has been previously convicted of at least two felonies committed on different occasions (and is now convicted of another on a different occasion); that defendant has been imprisoned on at least one of the prior felonies; and that less than five years have elapsed between commission of the felony now before the court and commission of the last prior felony or defendant's release from prison for one of the prior convictions. *Id.* § 3575(e)(1).[4] The court, having found all this to be true, must make another finding that defendant requires confinement longer than that permitted for the underlying felony in order to protect the public from his further criminal conduct. That finding is obviously a judgment similar to that which every sentencing judge makes in establishing whether to give a convicted defendant a short or long sentence within the range permitted by the underlying statute. The decision must be based upon the judge's view of the historical record, the nature of the underlying crimes, the presentence report, and the testimony presented by both sides as to defendant's character and propensity for criminal behavior.

We recognize that many states have required a trial court to find beyond a reasonable doubt that the defendant is a recidivist before sentencing him to an increased sentence. *In re Yurko*, 10 Cal.3d 857, 519 P.2d 561, 564, 112 Cal.Rptr. 513 (1974); *People v. Casey*, 399 Ill. 374, 77 N.E.2d 812, 815 (1948); *Smith v. State*, 243 Ind. 74, 181 N.E.2d 520, 522 (1962); *State v. Martin*, 336 S.W.2d 394, 396–97 (Mo.1960); *State v. Livermore*, 196 P. 977 (Mont.1921); *State v. Janiec*, 9 N.J.Super. 29, 74 A.2d 605, 606, *cert. denied*, 341 U.S. 955, 71 S.Ct. 1007, 95 L.Ed. 1376 (1951); *People v. Reese*, 258 N.Y. 89, 179 N.E. 305, 307 (1932); *State v. Waterhouse*, 209 Or. 424, 307 P.2d 327, 330

---

**4.** We do not have before us a defendant alleged to be a special offender within the meaning of subsections (2) or (3) of section 3575(e), and

thus we express no opinion on the validity of those subsections.

(1957) (en banc); *State v. Lawson,* 125 W.Va. 1, 22 S.E.2d 643, 644 (1942). We also recognize the difficulties in making a finding of dangerousness, and that any clinical or diagnostic process for identifying such offenders probably results in significant overprediction. *See ABA Standards for Criminal Justice—Sentencing Alternatives and Procedures* 40 (1979). But the Supreme Court has said, in connection with civil commitments for mental illness, "there is a serious question as to whether a state could ever prove beyond a reasonable doubt that an individual is both mentally ill and likely to be dangerous." *Addington,* 441 U.S. at 429, 99 S.Ct. at 1811.

 Finally, we recognize that "the prime responsibility for rationalizing the penalty structure of the penal code must in the last analysis fall upon the legislature." *ABA Standards, supra,* at 38. The preponderance standard inserted in section 3575(b) was a deliberate decision of Congress, a coordinate branch of government empowered by the Constitution to "provide for the . . . general Welfare of the United States." U.S.Const. art. I, § 8, cl. 1. The legislative history indicates that Congress was aware of the due process concerns—indeed the very arguments made here—and that it weighed these concerns. *See* H.R.Rep.No. 1549, 91st Cong., 2d Sess. (1970), *reprinted in* 1970 U.S.Code Cong. & Ad.News 4074–75 (statement of Rep. Dennis); *id.* at 4086–87 (statement of Reps. Conyers, Mikva and Ryan). We must, therefore, give great weight to its decision, *see Fullilove v. Klutznick,* 448 U.S. 448, 472, 100 S.Ct. 2758, 2771, 65 L.Ed.2d 902 (1980), and we are reluctant to say that Congress' balancing of those interests was incorrect.

Taking into account all these considerations, we conclude that Schell's interests and the government's interests are roughly equal and, therefore, that the trial court's use of section 3575's preponderance standard did not violate Schell's due process rights. In doing so we join four other circuits. *See United States v. Inendino,* 604 F.2d 458, 463 (7th Cir.), *cert. denied,* 444 U.S. 932, 100 S.Ct. 276, 62 L.Ed.2d 190 (1979); *United States v. Williamson,* 567 F.2d 610, 615 (4th Cir. 1977); *United States v. Bowdach,* 561 F.2d 1160, 1175 (5th Cir. 1977); *United States v. Stewart,* 531 F.2d 326, 334 (6th Cir.), *cert. denied,* 426 U.S. 922, 96 S.Ct. 2629, 49 L.Ed.2d 376 (1976).

AFFIRMED.

McKAY, Circuit Judge, concurring in part and dissenting in part:

I concur in the majority's conclusion that sentencing under the "dangerous special offender" provisions of the Organized Crime Control Act requires procedural protections beyond those provided in normal sentencing. However, I dissent from the majority's conclusion that the "preponderance of the information" sentencing standard specified by these provisions is sufficient to protect the defendant's due process rights.

## I.

Section 3575 of the Organized Crime Control Act provides criminal sentences, beyond those specified in the crime charged, for convicted defendants who are identified as "dangerous special offenders." 18 U.S.C. § 3575 (1976). Under the provisions of section 3575, the prosecution notifies the trial judge before trial of its intention to seek the special sentence. 18 U.S.C. § 3575(a). The jury is not informed of this notification. 18 U.S.C. § 3575(a). If the defendant is convicted of the crime originally charged, the trial judge holds a proceeding to determine whether the convicted defendant is a "special offender" under section 3575(e), and whether the defendant is "dangerous" under section 3575(f). Upon finding by the preponderance of the information that the defendant is both a "special offender" and "dangerous," the judge must sentence the defendant to the punishment prescribed by section 3575. 18 U.S.C. § 3575(b).

The majority recognizes that section 3575 imposes a sentence on a convicted defendant that is not specified by the crime charged and that is based upon a factual inquiry conducted in a separate criminal proceeding. The majority correctly con-

cludes that under the principles of due process expressed in *Specht v. Patterson,* 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967), the defendant is entitled to greater procedural safeguards in the section 3575 sentencing proceeding than he would receive in a normal sentencing proceeding. The principles of *Specht* are crucial to an understanding of the procedural protection that is due to the defendant, and therefore merit further elaboration.

In *Specht,* the Court considered the due process rights of a defendant sentenced under Colorado's Sex Offenders Act. This statute provided that if the trial court was "of the opinion that any ... person [convicted of specified sex offenses], if at large, constitutes a threat of bodily harm to members of the public, or is an habitual offender and mentally ill," he might receive an indeterminate sentence of from one day to life imprisonment. 386 U.S. at 607, 87 S.Ct. at 1211. Specht had been convicted of taking indecent liberties under a statute that carried a maximum penalty of ten years. He was sentenced to an indeterminate sentence under the Sex Offenders Act.

In reviewing Specht's due process claims, the Supreme Court stated that sentencing under the Sex Offenders Act presented a "radically different situation" from normal sentencing proceedings. 386 U.S. at 608, 87 S.Ct. at 1211. The Court noted that the statute "does not make the commission of a specified crime the basis for sentencing," but rather made one conviction "the basis for commencing another proceeding under another Act to determine whether a person constitutes a threat of bodily harm to the public, or is an habitual offender and mentally ill." 386 U.S. at 608, 87 S.Ct. at 1211. The Court characterized the invocation of the Sex Offenders Act as "the making of a new charge leading to criminal punishment" and concluded that proceedings under the statute must be conducted with procedural protections for the defendant beyond those provided in normal sentencing. 386 U.S. at 610, 87 S.Ct. at 1212.

Courts have encountered considerable difficulty in identifying when *Specht* applies.

*Compare United States v. Bowdach,* 561 F.2d 1160, 1172–75 (5th Cir. 1977) (*Specht* due process principles apply to section 3575 proceedings) *with United States v. Stewart,* 531 F.2d 326, 332 (6th Cir.), *cert. denied,* 426 U.S. 922, 96 S.Ct. 2629, 49 L.Ed.2d 376 (1976) (*Specht* due process principles do not apply to section 3575 proceedings). In particular, courts have had difficulty in determining the factors that made sentencing under the Sex Offenders Act in *Specht* a "radically different situation" from normal sentencing proceedings. *See, e.g., Bowdach,* 561 F.2d at 1173 (increased sentence triggered by a separate conviction and new finding of fact); *Stewart,* 531 F.2d at 332 (a new and distinct criminal charge); *United States ex rel. Sero v. Preiser,* 372 F.Supp. 663, 665 (S.D.N.Y.), *aff'd in part,* 506 F.2d 1115 (2d Cir. 1974), *cert. denied,* 421 U.S. 921, 95 S.Ct. 1587, 43 L.Ed.2d 789 (1975) (a separate decision of fact outside the traditional sentencing process). This disparity of opinion demonstrates that the language of *Specht,* standing alone, does not provide concrete guidance in evaluating the due process interests at stake. *See generally* Note, *The Constitutionality of Statutes Permitting Increased Sentences for Habitual or Dangerous Criminals,* 89 Harv.L.Rev. 356 (1975).

Five years after *Specht,* the Supreme Court developed a more disciplined method of due process analysis that concentrates on the nature of the interest at stake. *See Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Under this approach, a court first determines whether the party raising a due process complaint has a protected property or liberty interest. 408 U.S. at 570–71, 92 S.Ct. at 2705–06. If the court finds that the party has such an interest, the court must then determine what procedural safeguards are required, based on the importance of the interests involved. 408 U.S. at 570 n.8, 92 S.Ct. at 2705 n.8. The Supreme Court has employed this method in cases that raise issues of post-conviction due process rights. *See, e.g., Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1973); *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593,

33 L.Ed.2d 484 (1972). Recent applications of this method clarify the due process rights accorded by *Specht*.

In *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976), the Supreme Court stated that by convicting a person of a crime, the government curtails a liberty interest. 427 U.S. at 224, 96 S.Ct. at 2538. The Court explained that "given a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution." 427 U.S. at 224, 96 S.Ct. at 2538; *accord Greenholtz v. Nebraska Penal Inmates,* 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979). The Court noted that a conviction curtails a defendant's right to freedom from confinement, but it does not extinguish this liberty interest completely. *See Meachum,* 427 U.S. at 224–25, 96 S.Ct. at 2538. Thus, in *Vitek v. Jones,* 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980), the Court held that where a convicted felon was transferred from a state prison to a mental hospital pursuant to a state statute, the transfer implicated a liberty interest that is protected by the due process clause. 445 U.S. at 494, 100 S.Ct. at 1264. Relying in part on *Specht,* the Court concluded that the transfer of a prisoner to a mental hospital was not within the range of confinement justified by the conviction. 445 U.S. at 493, 100 S.Ct. at 1264.

*Meachum* and *Vitek* indicate that the crucial inquiry where post-conviction due process claims are advanced is whether the party asserts a liberty interest which was not extinguished by the criminal conviction. In particular, *Vitek* suggests that *Specht* due process concerns arise where a statute imposes a post-conviction restriction on the defendant's liberty greater than that permitted by the criminal conviction. Thus, the application of *Specht* requires an inquiry into the nature and scope of a criminal conviction.

As the Supreme Court has stated, a criminal conviction limits a defendant's right to freedom from confinement. *Meachum,* 427 U.S. at 224–25, 96 S.Ct. at 2538; *Greenholtz,* 442 U.S. at 7, 99 S.Ct. at 2103. The scope of this limitation typically is specified by a sentence, or a range of sentences, in the statute that defines the crime. A defendant has only limited grounds to contest the sentence specified in the statute because the specification is a matter of "legislative prerogative." *Rummel v. Estelle,* 445 U.S. 263, 274, 100 S.Ct. 1133, 1139, 63 L.Ed.2d 382 (1979) (footnote omitted). Likewise, when a court chooses the sentence from the range specified in the statute, the defendant has only limited due process rights to contest the court's choice, *Williams v. New York,* 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), because the criminal conviction has extinguished the defendant's right to freedom within that range. However, when a separate statute imposes on a convicted defendant a sentence beyond that specified in the statute defining the crime, *Specht* states that a "radically different situation" arises. 386 U.S. at 608, 87 S.Ct. at 1211. This situation is different because the statute encroaches on a liberty interest in freedom from confinement which was not extinguished by the criminal conviction.

The legislature's specification of a sentence, or range of sentences, in the statutory definition of a crime declares the liberty interest in freedom from confinement which is lost through a conviction. By explicitly providing the maximum sentence that can result from conviction, however, it also defines the residuum of liberty interest in freedom from confinement that the defendant retains after conviction. *See Meachum,* 427 U.S. at 225, 96 S.Ct. at 2538 (confinement must be within "the range of custody which the conviction has authorized the State to impose"); *Vitek,* 445 U.S. at 493, 100 S.Ct. at 1264 (conviction of a defendant does not entitle a State to subject him to involuntary commitment in a mental hospital). Unlike the post-conviction liberty interests involved in parole revocation, *Morrisey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), and "good-time

credit" revocation, *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1973), this residual liberty interest is not created and conditioned by statutory enactment. Instead, it is the absolute right to freedom from confinement that was left unextinguished by the conviction. *Specht* implicitly recognizes the existence of this interest. Articulated in the terminology of modern due process analysis, *Specht* provides that a statute that imposes a sentence in a post-conviction proceeding beyond that specified in the crime charged impairs a defendant's residual liberty interest in freedom from confinement.[1] Consequently, under the theory of due process explained in *Roth,* 408 U.S. at 570 n.8, 92 S.Ct. at 2705 n.8, such a statute must provide procedural safeguards consistent with the interests involved.[2]

Section 3575 and the dangerous special offender proceeding it provides clearly implicate *Specht* due process concerns.[3] The statute imposes a sentence on a convicted defendant beyond that specified in the crime for which he was convicted, and thereby encroaches on a protected liberty interest in freedom from confinement. I conclude, as the majority agrees, that *Specht* requires the government to provide procedural safeguards in the section 3575 proceeding that are consistent with the interests at stake. I further conclude, unlike the majority, that the procedural safeguards must include a standard of proof of greater discipline than the "preponderance of the information" standard.

## II.

The *Specht* opinion lists a number of procedural safeguards that must be provided in post-conviction sentencing statutes. 386 U.S. at 610, 87 S.Ct. at 1212. However, as the majority notes, *Specht* does not specify the appropriate standard of proof for proceedings conducted under these statutes. Consequently, Mr. Schell's claim that the liberty interest at stake in the "dangerous special offender" proceeding merits a standard more rigorous than the "preponderance of the information" test must be determined by evaluating the importance of the competing interests involved. *Board of Regents v. Roth,* 408 U.S. 564, 570 n.8, 92 S.Ct. 2701, 2705 n.8, 33 L.Ed.2d 548 (1974). In particular, identification of the specific dictates of due process requires consideration of three factors: (a) the private inter-

---

1. It is sufficient for the purposes of this case simply to identify the holding of *Specht.* However, the reason why *Specht* holds that a post-conviction sentencing statute impairs a liberty interest deserves mention. The statutory definition of a crime expresses the legislature's determination of the relevant facts and the consequent punishment for the particular crime. A trial provides the mechanism for proving the relevant facts beyond a reasonable doubt, and a conviction classifies the defendant as within the statutory definition and subject to the specified punishment. A statute that imposes an additional sentence through a separate post-conviction proceeding results in a reclassification of the defendant for the purpose of enhanced punishment. This reclassification is essentially identical to an additional criminal conviction. Consequently, the defendant's liberty interest that survived the original conviction is entitled to procedural protections, similar to those provided at trial, in the post-conviction proceeding. *See Specht,* 386 U.S. at 608–10, 87 S.Ct. at 1211–12.

2. In determining whether the restriction on liberty exceeds that permitted by the criminal conviction, a court may need to consider tradeoffs between the length of the term imposed and the conditions of confinement. *See Carter v. United States,* 306 F.2d 283, 285 (D.C.Cir. 1962) (a longer term imposed under the Youth Corrections Act is constitutional because the conditions of confinement under the Act cannot be equated with incarceration in an ordinary prison). *But see Ralston v. Robinson,* 454 U.S. 201, 219–20 n.13, 102 S.Ct. 233, 244 n.13, 70 L.Ed.2d 345 (1981) (if conditions of confinement are modified so that a youth serves an adult sentence of greater length than an adult could receive, constitutional issues may arise).

3. Indeed, in drafting the Organized Crime Control Act, Congress recognized that section 3575 implicated the due process concerns expressed in *Specht. See* H.R.Rep.No. 1549, 91st Cong., 2d Sess. (1970), *reprinted in* 1970 U.S.Code Cong. & Ad.News 4007, 4069–70 (response of the Department of Justice to inquiries concerning the Organized Crime Control Act); *id.* at 4074–75 (statement of Rep. Dennis); *id.* at 4086–87 (statement of Reps. Conyers, Mikva and Ryan). Apparently in response, Congress incorporated in section 3575 the procedural safeguards explicitly mentioned in *Specht.*

est that the government's action will affect; (b) the risk of an erroneous deprivation of the interest through the procedures used, and the probable value of additional or substitute procedural safeguards; and (c) the government's interest, including the function involved and the burdens that the substitute procedural requirements would entail. *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

### A.

The liberty interest that Schell asserts is his right to freedom from confinement beyond the maximum term specified for the crime charged. This interest is perhaps less substantial than the liberty interest at stake during a criminal trial: additional confinement may be less onerous than surrender of freedom in the first instance; the stigma that attaches to the special offender status may be less odious than the stigma of conviction. Nevertheless, punitive incarceration is among the most severe intrusions on fundamental freedom, curtailing "interests of immense importance." *In re Winship,* 397 U.S. 358, 363, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970). Furthermore, Mr. Schell's liberty interest is not delimited by the terms of its creation. Unlike the interests encountered in parole revocation, *Morissey, supra,* or revocation of "good-time credit," *Wolff, supra,* the interest that Mr. Schell asserts is not created or conditioned by statute. Nor is Mr. Schell's liberty interest diminished by considerations of his own best interests. Unlike the civil commitment considered in *Addington v. Texas,* 429 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979), Mr. Schell's confinement is not for treatment from which he might benefit. These considerations indicate that Mr. Schell's right to freedom from confinement is fundamentally important and unqualified. Consequently, Mr. Schell asserts a liberty interest of high order.

### B.

The "preponderance of the information" standard utilized in section 3575 proceedings is applied to determine whether the defendant is a "dangerous special offender." Under section 3575, the defendant is dangerous if "a period of confinement longer than that provided [in the crime for which the defendant was convicted] is required for the protection of the public from further criminal conduct by the defendant." 18 U.S.C. § 3575(f). The application of the preponderance standard to this determination of dangerousness results in a substantial risk of an erroneous deprivation of the defendant's liberty interest.

The Supreme Court, the lower courts, legal commentators and psychiatrists all recognize that it is exceedingly difficult to predict future dangerousness. *See Addington v. Texas,* 441 U.S. 418, 429, 99 S.Ct. 1804, 1811, 60 L.Ed.2d 323 (1979); *Hollis v. Smith,* 571 F.2d 685, 695 (2d Cir. 1978); *ABA Standards for Criminal Justice—Sentencing Alternatives and Procedures* 40 (1979). *See also* American Psychiatric Association, *Task Force Report on the Clinical Aspects of Violent Individuals* 28 (1974) *and* Rubin, *Prediction of Dangerousness in Mentally Ill Criminals,* 27 Arch. General Psychiatry 397 (1972), *cited in United States v. Edwards,* 430 A.2d 1321, 1370 n.17 (D.C. App.1981) (en banc) (Mack, J. dissenting), *cert. denied,* 455 U.S. 1022, 102 S.Ct. 1721, 72 L.Ed.2d 141 (1982). The uncertainty attendant in predicting dangerousness, coupled with the low threshold of proof required to establish dangerousness under section 3575, creates a substantial risk that persons who are not truly dangerous will be erroneously deprived of their liberty.

A more rigorous standard of proof is likely to reduce substantially the risk of an erroneous deprivation of liberty. A more rigorous standard mitigates the uncertainty involved in determining dangerousness. Moreover, it offers particular protection to the defendant who is merely "more likely than not" to be dangerous, the defendant *most likely* to be erroneously deprived of his freedom.

### C.

The government has two interests in the standard of proof used to determine "dan-

gerous special offender" status: first, the protection of society from persons who are indeed dangerous; and second, the protection of persons who are not dangerous from imprisonment. Both interests are of a high order, the first assuring the safety of the public, the second maintaining the "moral force" of the criminal law. *See Addington,* 441 U.S. at 428–30, 99 S.Ct. at 1810–11.

The preponderance standard furthers the first interest because it imposes a minimal burden in establishing dangerousness, and thereby increases the likelihood that dangerous special offenders will be insulated from society. However, as previously noted, the preponderance standard poses a substantial threat that persons who are not dangerous will be sentenced as well. Thus, the preponderance standard hampers the government's second interest by wrongfully imprisoning persons and undermining the moral force of the criminal law.

A more rigorous standard of proof will affect the government's interests, but the precise effect depends upon the standard imposed. A standard requiring proof "beyond a reasonable doubt" offers enhanced assurance that defendants are not erroneously determined to be dangerous, but it might prove an insuperable obstacle to removing dangerous defendants from society. The Supreme Court has noted that in determinations of dangerousness for the purpose of civil commitment, this standard may be too demanding given the subjective nature of the dangerousness determination. *Addington v. Texas,* 441 U.S. 418, 429–30, 99 S.Ct. 1804, 1811, 60 L.Ed.2d 323 (1979). A standard requiring "clear and convincing" evidence provides a compromise between the preponderance and the reasonable doubt standards. It offers increased protection from erroneous determinations of dangerousness compared to the preponderance standard, yet provides an attainable standard for establishing dangerousness.

Courts have required a "clear and convincing" standard to determine dangerousness in civil commitment proceedings, *Addington,* and to determine dangerousness in state "sex offender" sentencing proceedings, *Hollis v. Smith,* 571 F.2d 685 (2d Cir. 1978). The Supreme Court has required this standard in deportation proceedings as well. *Woodby v. INS,* 385 U.S. 276, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966).[4]

The foregoing consideration of the factors relevant to Mr. Schell's due process claim indicates that his liberty interest is of a high order and that the use of the preponderance of evidence standard presents a substantial risk of an erroneous deprivation of that interest. It also shows that a more rigorous standard of proof will significantly reduce the risk of this deprivation. Finally, it indicates that the government's interests are also important. The preponderance standard furthers the government's interest in minimizing the burden of proving dangerousness but it impedes the government's interest in avoiding erroneous determinations of dangerousness. A more rigorous standard increases the burden of proving dangerousness, but reduces the risk of an erroneous determination.

On the basis of these considerations, I conclude that a section 3575 proceeding requires a more rigorous standard of proof than preponderance of the evidence when the proceeding results in the deprivation of the defendant's liberty interest in freedom from confinement. I believe that, at a minimum, a "clear and convincing" standard is required by due process. The "clear and convincing" standard provides essential protection of the defendant's important liberty interest while providing a comparatively small additional burden on governmental interests. Moreover, the "clear and convincing" standard is the commonly used test for determinations of dangerousness in other equally serious contexts where important

---

4. Indeed, Congress itself has required a "clear and convincing" standard for determinations of dangerousness in pretrial detention proceedings. D.C.Code Ann. § 23–1322(b)(2)(A). The constitutionality of the pretrial detention standard has not been finally adjudicated; issues include whether even the "clear and convincing" standard is sufficient to protect defendant's due process rights. *See United States v. Edwards,* 430 A.2d 1321 (D.C.App.1981) (en banc), *cert. denied,* 455 U.S. 1022, 102 S.Ct. 1721, 72 L.Ed.2d 141 (1982).

liberty interests are at stake. For these reasons, I dissent from the majority opinion.