**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Rafael LOZANO, Defendant-Appellant.**

**No. 74–1053.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 23, 1974.

Decided Feb. 18, 1975.

Rehearing Denied April 7, 1975.

Jose R. Vazquez, Ralph M. Schelly, Chicago, Ill., for defendant-appellant.

James R. Thompson, U. S. Atty., Gary L. Starkman and Donald G. Newman,

Asst. U. S. Attys., Chicago, Ill., for plaintiff-appellee.

Before FAIRCHILD, Chief Judge, and HASTIE * and CASTLE, Senior Circuit Judges.

FAIRCHILD, Chief Judge.

Three defendants, appellant Lozano, Goulart, and Leyva, were indicted for offenses arising out of an alleged scheme to arrange a marriage in order fraudulently to obtain permanent resident alien status for Priciliano Pantoja, a Mexican national. Appellant was convicted on Counts 1, 2, 3, 4 and 6, and sentenced to 18 months imprisonment on Count 1 and concurrent terms of probation on other counts.

## CONSPIRACY COUNT

Count 1 charged the three defendants with conspiring with Carmen Colon (Irma Otero), Pantoja and others to commit offenses: (1) knowingly and willfully concealing and covering up by trick, scheme, and device a material fact in a matter within the jurisdiction of the Immigration and Naturalization Service (18 U.S.C. § 1001); (2) knowingly making under oath a false statement with respect to a material fact in a document required by immigration laws and regulations prescribed thereunder (18 U.S.C. § 1546); (3) knowingly presenting such document containing a false statement (18 U.S.C. § 1546); and (4) knowingly obtaining, accepting, receiving, possessing and using an Immigrant Visa, knowing the same to have been procured by means of false claims, false statements, and by fraud (18 U.S.C. § 1546).

It was alleged that as part of the conspiracy, defendants would arrange for Pantoja to participate in a marriage ceremony with Carmen Colon; that the parties would never live together and the marriage would not be consummated; that a petition would be executed, based on the ceremony, and filed so that if approved, Pantoja would obtain an immigrant visa and re-enter and reside in the United States as a permanent resident alien; and that he and Carmen Colon would be divorced.

■ Considering the evidence in the light most favorable to supporting the verdict, it demonstrates that Pantoja, an alien illegally here, was a boarder at Lozano's. In the fall of 1970, Pantoja and Colon (though the latter used other names) went through two Illinois marriage ceremonies, the second being necessary because of a problem about the name used by Colon the first time. The marriage was not consummated, the parties did not live together, Colon was paid, and there was ample evidence from which the jury could find that Lozano put Pantoja in touch with Goulart; that both were active in arranging the marriage; that all knew the purpose was only to obtain a change in Pantoja's immigration status; and that Lozano knew they could be jailed if the scheme became known.

On March 4, 1971, Colon signed, swore to, and filed a "Petition to classify status of alien relative for issuance of immigrant visa," (Form I–130). By filling in responses in various blanks, she represented that Pantoja was married, and was her husband; that the date and place of her present marriage was November 23, 1970, Chicago, Illinois; and that she and her spouse resided together at 505 South Sixth Avenue, Maywood, Illinois, from November 23, 1970 to the present. The address was Lozano's, and she indicated in other blanks that it was her residence as well as Pantoja's.

The petition was approved. Pantoja went to Mexico, obtained his visa and re-entered the United States.

■ Appellant argues that under Illinois law the marriage, although its purpose was limited to obtaining immigration benefits for Pantoja, was not void on that account. The claim appears to be correct. DeVries v. DeVries, 195 Ill. App. 4 (1915); Burrell v. Burrell, 12 Ill. App.2d 471, 139 N.E.2d 850 (1957); Brat-

---

* Senior Circuit Judge William H. Hastie of the United States Court of Appeals for the Third Circuit is sitting by designation.

kovich v. Bratkovich, 34 Ill.App.2d 122, 126, 180 N.E.2d 716 (1962).[1]

We shall reserve for later our consideration of whether the legal status of the marriage affects the substantive false statement and concealment counts. The objects of the conspiracy charged in Count 1 included not only the offense of making and using false statements, and concealment of a material fact, but also of obtaining and using a visa, knowing it to have been procured by fraud. The Supreme Court sustained a conviction on a conspiracy count essentially indistinguishable and held that the validity of the similarly limited marriages in that case was immaterial. Lutwak v. United States, 344 U.S. 604, 611, 73 S.Ct. 481, 97 L.Ed. 593 (1953). The Court considered that in making certain immigration benefits depend on marriage, Congress must have intended a relationship not limited as in the case at bar. The Court said:

> "The common understanding of a marriage, which Congress must have had in mind when it made provision for 'alien *spouses*' in the War Brides Act, is that the two parties have undertaken to establish a life together and assume certain duties and obligations. Such was not the case here, or so the jury might reasonably have found. Thus, when one of the aliens stated that he was married, and omitted to explain the true nature of his marital relationship, his statement did, and was intended to, carry with it implications of a state of facts which were not in fact true." pp. 611–612, 73 S.Ct. p. 486.

Conviction on a similar conspiracy count (accompanied by a count charging concealment) was upheld in Johl v. United States, 370 F.2d 174 (9th Cir. 1966).

## CONCEALMENT COUNT

Count 2 charged the three defendants with aiding and abetting Colon in filing the petition "concealing from said Agen-

cy the fact that she, Carmen Colon, had gone through a marriage ceremony with Priciliano Pantoja solely for the purpose of obtaining status for the said Priciliano Pantoja as a permanent resident alien, with the understanding that she and Priciliano Pantoja would not live together as man and wife." (18 U.S.C. § 1001).

The theory underlying the concealment charge is that the intention of the parties to the marriage to limit their relationship is a material fact under the immigration law. Here there was not only an assertion that Pantoja was the husband of Colon, and an omission of the material fact of the intended limitation, but the concealment was bolstered by the false statement that the parties had been residing together at the same address.

■ Lutwak establishes that Congress did not intend to grant favored treatment on the basis of marriage to those persons whose marriages were designed with this limited purpose in mind. Thus the intended limitation was a material fact.

Lutwak has been interpreted as relying upon the concealment theory. United States v. Diogo, 320 F.2d 898, 904 (2d Cir. 1963). The Ninth Circuit affirmed a conviction of concealment under § 1001 (as well as conspiracy) in a comparable case. Johl v. United States, 370 F.2d 174 (9th Cir. 1966). Interpreting Lutwak, the court said, at page 177:

> "Lutwak clearly means at least this much: The immigration law, in granting advantages to those who have married American citizens, is not talking about ceremony or legality—the taking of those steps which enable a couple lawfully to live together in a marital relationship. It is talking about the *marital relationship itself*— an actual joining together as husband and wife. Separation is wholly inconsistent with such a relationship. It is a departure from it and a severing of it, and may even, by agreement or

1. Actually the marriage was void for a different reason; Colon had previously been married and the marriage had not been dissolved.

Because there is nothing to show that Lozano was aware of this fact, we disregard it.

court decree, constitute a status distinct from it. Here, and in *Lutwak,* the very ceremony was accompanied by an agreement of separation. While the parties could lawfully have done so, they never at any time joined together as husband and wife. Here, then, the Government's concern with purpose did not relate to such troublesome questions as the normality of a marital relationship, but with the parties' purpose in going through a ceremony where no such relationship was comtemplated or ever begun."

■ Appellant Lozano was not present when Colon filled in the petition form, and there is no direct proof that he was aware of the specific information called for or the exact responses she would make. Nevertheless it was easily foreseeable that she would affirmatively inform the INS of the marriage and conceal its limited nature, and such representation and concealment were essential to the success of the plan. Proof of Lozano's active and intentional participation in the earlier steps of the transaction is a proper base for conviction by reason of aiding and abetting.

## FALSE STATEMENT COUNTS

■ Count 3 charged the three defendants with aiding and abetting Colon in knowingly making, under oath, a false statement in the petition by stating that she was married to Pantoja, knowing that "the purported marriage . . . was a false and fraudulent relationship, entered into for the sole purpose . . 27" of affecting Pantoja's immigrant status. Count 4 charged them with aiding and abetting her in presenting the petition containing such false statement. (18 U.S.C. § 1546). Although it was clearly false to say that the parties had resided together at Lozano's address since the date of the marriage, the indictment did not make that charge. Thus these counts turn on whether it was a false statement to say that petitioner was married to Pantoja (actually that Pantoja was her "husband").

In a comparable case the Second Circuit reversed convictions of making false statements (18 U.S.C. §§ 1001 and 1546). United States v. Diogo, 320 F.2d 898, 909 (1963). After discussing the theory of *Lutwak,* the court concluded that the meaning of the parties' representation that they were "married" must be the meaning intended by the parties; that it is as reasonable to suppose they made it with the state law in mind as that they made it with the meaning ascribed by Congress for the purpose of the immigration law; and therefore there was a failure of proof of falsity.

Although it seems plausible that in representing that Pantoja was the husband of Colon, Colon was asserting (and Lozano intended that she assert) that there was a marriage in the sense acceptable for immigration purposes, we choose to follow the reasoning of the Second Circuit and to vacate the judgment and sentence on these two counts.

We note that the reluctance in *Diogo* to find a knowing false statement where the challenged assertion may be literally true, even if false by implication or omission, is consistent with the Supreme Court's recent construction of the federal perjury statute, 18 U.S.C. § 1621, in Bronston v. United States, 409 U.S. 352, 360, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973) and cases cited therein.

## OBSTRUCTION COUNTS

■ Count 5 charged Lozano and Goulart with willfully endeavoring by means of misrepresentation, intimidation, and threats of force to obstruct, delay and prevent the communication by Pantoja of information relating to criminal violations to authorized investigators. Count 6 charged them with similarly (including by bribery) endeavoring to prevent such communication by Carmen Colon.

On September 5, 1972 Lozano learned that Pantoja had been investigated by INS agents and had made statements to them. There was evidence that Lozano forced or persuaded Pantoja to accompany Goulart and himself to the office of a

lawyer and to make a false deposition concerning the marital relationship.

Goulart met separately with Colon and paid her to make a false deposition to the same attorney. There is no direct evidence linking Lozano to Goulart's efforts with Colon. Only the similarity of the transactions, and an inference therefrom that there was a conspiracy between Lozano and Goulart to bring them both about, could provide a basis for the verdict of guilt as to Lozano on Count 6. We deem the inference too speculative, and the judgment and sentence will be vacated on this count.

## FAIR TRIAL CLAIMS

■ Lozano argues that certain occurrences during his trial were inherently prejudicial. He first asserts that the interpreters who translated Pantoja's testimony were not properly qualified; were biased in that they were employed by the Immigration and Naturalization Service; and mistranslated an important phrase. We find these claims to be without merit. No objection was made by the defendant to the qualifications or possible bias of any of the interpreters during trial. Mere employment by a governmental agency, absent a showing of actual bias or misconduct, is not sufficient to establish prejudice. Chee v. United States, 449 F.2d 747 (9th Cir. 1971). Similarly, no objection was made to the interpretation of the phrase which defendant now attacks. The record shows the trial judge's concern that Lozano, who apparently speaks both English and Spanish, be able to hear both the testimony of Pantoja and the interpreter's translation. Under these circumstances, failure to interpose a timely objection constitutes a waiver of the objection on appeal.

■ Lozano also argues that the government counsels' behavior throughout the trial was highly improper and prejudicial. We agree that there were indeed instances of improper conduct.

On several occasions, over repeatedly sustained objections, the government persisted in propounding questions concerning unrelated impropriety or illegal activity by Lozano. Such conduct illustrates a disturbing lack of respect for the rights of the accused and of the trial court's authority, and must be condemned. Assessing prejudice, however, requires a delicate balancing. We have examined the entire record carefully and have determined that an experienced trial judge ably responded to the misconduct, sustaining objections, reprimanding the attorneys and instructing the jury to disregard the questions. Under these circumstances, while certainly expressing disapproval of the improper conduct evidenced, we conclude that Lozano was not thereby deprived of a fair trial.

## MERGER OF THE SUBSTANTIVE COUNTS INTO THE CONSPIRACY COUNT

■ Lozano finally contends that the substantive § 1001 and § 1546 violations charged in Counts 2, 3 and 4 merged into the conspiracy count because all of the offenses charged arose from the same scheme. We disagree. The commission of the substantive offense and a conspiracy to commit it are separate and distinct offenses. Pinkerton v. United States, 328 U.S. 640, 643–644, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946); United States v. Fellabaum, 408 F.2d 220, 223 (7th Cir. 1969), cert. denied, 396 U.S. 858, 90 S.Ct. 125, 24 L.Ed.2d 109. In the instant case, while the conspiracy and substantive counts were closely related factually, the elements of proof necessary to sustain a conviction for aiding and abetting, on the one hand, and of conspiracy on the other, are substantially different.

The judgment of guilt and the sentences on Counts 3, 4 and 6 are vacated and, upon remand, these counts are to be dismissed. In all other respects the judgment and sentences are affirmed.