**UNITED STATES of America, Plaintiff,**

v.

**Jody CANNON, Defendant.**

**Crim. No. 92–41–MAC(DF).**

United States District Court,
M.D. Georgia,
Macon Division.

Jan. 29, 1993.

**1570**

Miriam Duke, Sharon Ratley, Asst. U.S. Attys., Macon, GA, for plaintiff.

Mitchell P. House, Jr., Sell & Melton, Macon, GA, for defendant.

FITZPATRICK, District Judge.

Defendant's motion for judgment of acquittal and motion for a new trial presently are pending before the Court. Defendant Cannon was charged in a five (5) count indictment with violations of 18 U.S.C. § 371 i/c/w 18 U.S.C. § 1001 and 18 U.S.C. § 1001 and § 2. Cannon was found guilty only of Counts One and Five.

## I. JUDGMENT OF ACQUITTAL

■■■ A judgment of acquittal only may be granted if the evidence is insufficient to support the verdict. *See United States v. Varkonyi*, 611 F.2d 84, 86 (5th Cir.), *cert. denied*, 446 U.S. 945, 100 S.Ct. 2173, 64 L.Ed.2d 801 (1980). In considering Defendant's motion, this Court must determine whether, "viewing all the evidence in the light most favorable to the Government and drawing all reasonable inferences and credibility choices in favor of the jury's verdict, [citation omitted], a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt." *United States v. O'Keefe*, 825 F.2d 314, 319 (11th Cir.1987) (citation omitted). Furthermore, "it is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt. A jury is free to choose among reasonable constructions of the evidence." *United States v. Bell*, 678 F.2d 547, 549 (5th Cir.1982) (en banc), *aff'd* 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983).

### A. Background

The following evidence, viewed in a light most favorable to the Government, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), was presented at trial. Jody Cannon worked for Space Age Manufacturing, Inc. ("Space Age") approximately twenty (20) years. (Transcript, Volume 2, page 85) (hereinafter "T__:__"). He served as the General Manager during the time covered in the indictment and left the company in 1990 when he realized that his opportunities for advancement were limited. (Id.) John C. "Jack" Kerstetter is the President and sole owner of Space Age. (T1:30). Space Age was awarded Air Force contracts to produce C–130 aircraft parts and armor plating for H–53 helicopters.

Linda Phillips, a former agent of the Air Force Office of Special Investigations, testified that she first met Cannon on January 18, 1991, while executing a federal search warrant, unrelated to the present case, at Falcon Manufacturing where Defendant

was employed as General Manager and Vice-President. (T1:54–55). While executing the warrant, Cannon approached Agent Phillips and said "if you think this is bad, you should hear what happened at Space Age." (T1:55). When Agent Phillips asked what Cannon was he talking about, he responded "what's in it for me," (T2:28), and indicated that he had information regarding C–130 aircraft parts that had been manufactured by Space Age, which did not conform to contract specifications. (T1:56). Defendant then accompanied Agent Phillips to Robins Air Force Base ("RAFB") to be interviewed. (Id.) During the interview Cannon explained he had been the General Manager at Space Age and had been responsible for the day-to-day operation and management of the plant and that he had dealt with the government on government contracts and had submitted bids and placed orders.[1] (T1:72). He also gave information concerning connecting links Space Age had manufactured for C–130 airplanes. (T1:64).

On January 22, 1991, Defendant voluntarily returned to Agent Phillips' office and told her that Space Age had received five contracts from RAFB for the production of armor plating for the use on H–53 helicopters and that Space Age had not complied with the contract's material specifications on some of those contracts.[2] (T1:64–65). Contract F09603–89–6–0051–0063 ("contract 0063") required the use of MIL–T–46077 titanium, which is titanium that has been ballistically tested. (See T1:66; Government Exhibit 21–C). Cannon told Agent Phillips that when Space Age ran out of MIL–T–46077 he realized that it would lose money if it purchased MIL–T–46077 as opposed to MIL–T–9046 titanium, which has not been ballistically tested. (T1:69). He discussed this discovery with Kerstetter who told[3] him to order MIL–T–9046. (T1:70). On March 21, 1990, Cannon ordered MIL–T–9046 titanium. (T2:107, 109; Government Exhibit 24–A–2). When Agent Phillips asked how he got the substitution past the government's Quality Assurance Representative[4] ("QAR"), Cannon explained that by taking the certification of conformance from the titanium seller, B & S Aircraft Alloys, Inc., ("B & S"), for MIL–T–46077 titanium, copying it and whiting out the appropriate section, he could reuse the same certificate for other contracts when the QAR came to the plant. (T1–71).

Space Age submitted a DD Form 250[5] ("DD 250"), dated April 16, 1990, and signed by QAR Don Haas, (T1–90), to the Air Force and was paid for contract 0063. (T3:35). A DD 250 is the material inspection and receiving report prepared by a contractor when he is ready to deliver the contract items to the government. (T3:21). The pre-printed government form contains the following statement:

> __ PQA __ ACCEPTANCE of the listed items has been made by me or under my supervision and they conform to contract, except as noted herein or on supporting documents.

A signature line for the QAR appears below the statement. (Government Exhibit 24–A–1). When the contractor submits the document he is telling the government that he has manufactured the items in accordance with government specifications and is ready to deliver them. (T3:35).

1. Although Cannon contends that the Government did not establish that he had these duties, Suzanne Walker, Lead Contracting Officer for the Special Forces Directorate at RAFB, testified that she had dealt with Jody Cannon a number of times and specifically on contract 0063. Additionally, Marilyn Greenwald, a metals broker at B & S Aircraft Alloys, Inc., testified that Cannon placed orders with her. (T2:92).

2. Cannon provided the specific contract numbers to Agent Phillips in conversations that occurred after January 22, 1991.

3. Defendant states that the evidence only shows that he was "ordered" to purchase the non-specified titanium. Agent Phillips, however, testified that Jody Cannon never told her that he was forced to substitute the non-specified titanium or that he involuntarily ordered it. (T2:82).

4. The QAR assures that a government contractor is complying with all government specifications and accepts the product for the government. (T3–42).

5. Government Exhibit 24–A–1 is DD Form 250 for Space Age Job No. 5497, which corresponds to government contract 0063. (T1–90).

QAR Haas testified that he had dealt with Cannon, Kerstetter and Mike Shepard as quality control managers for Space Age. (T3:46). When Haas visited Space Age he was provided with an inspection folder, which contained anything applicable to a contract. (T3:47). Before he signed a DD 250 Haas would look for the certification of conformance, which was in the contractor's inspection file, and make sure it complied with the contract specification. (T3:62). He had no way of knowing whether the materials listed on the certification actually were used in the product. Rather, he had to rely on the contractor's integrity and the certificate of conformance to know that what was ordered was actually used. (T3:64–65).

Although Agent Phillips testified that a B & S certification of conformance designating MIL–T–9046 [6] titanium was in Space Age's inspection folder for contract 0063 when it was seized, Haas testified that he did not see that particular document on the day he signed the DD 250. Haas further stated that he was not curious when Kerstetter presented him with the Space Age inspection report for contract 0063, which contains a reference to 6AL4V titanium [7], (T3:77, Defendant's Exhibit 16), because he checked the contract and then pulled the certification of conformance and verified it to the contract specification. (T3:79, 81). He admitted that he did not know if the certification of conformance for MIL–T–46077 titanium was in the inspection file, but testified that at the time the DD 250 was presented to him, he was given the right documentation or he would not have signed the form. (T3:91). He denied sign-

ing the DD 250 without inspecting the product. (T3:92).

On January 24, 1991, Agent Phillips and FBI Agent Fred Stofer executed a search warrant on Space Age and seized records concerning the contracts for armor plating and C–130 aircraft parts.

**B. Discussion**

Defendant contends that the evidence is insufficient to sustain his convictions.

### 1. *Count One*

■ Count One of the indictment charged Cannon with conspiracy to defraud the United States government in that he "made, caused to be made, used and caused to be used, false and fraudulent documents in performance of certain contracts for manufacture of certain items for the United States Air Force." In order to sustain the conspiracy conviction the evidence must show an agreement by two or more persons to combine efforts for illegal purposes and an overt act in furtherance of the conspiracy by one of the members. *United States v. Fischetti*, 450 F.2d 34, 40 (5th Cir.1971), *cert. denied*, 405 U.S. 1016, 92 S.Ct. 1290, 31 L.Ed.2d 478 (1972). Having reviewed the trial transcript the Court concludes that a reasonable jury could conclude that the Government proved Count One beyond a reasonable doubt.

### 2. *Count Five*

■ In Count Five [8] Defendant was charged with aiding and abetting the making of a false document, causing a false document to be made, using a false docu-

---

6. Government Exhibit 24–B–1.

7. Ms. Greenwald testified that MIL–T–9046 and MIL–T–46077 are military specifications for 6AL4V titanium. (T2:93).

8. Count Five specifically alleges:
 That on or about April 16, 1990, in the Macon Division of the Middle District of Georgia and elsewhere within the jurisdiction of this Court, JODY CANNON, defendant herein, aided and abetted by others, in a matter within the jurisdiction of the Department of Defense and the United States Air Force, departments and agencies of the United States of America, did knowingly and willfully make, cause to be made, use, and cause to be used, false, fictitious, and fraud-

ulent statements and representations and did make, cause to be made, use, and cause to be used, false writings and documents knowing the same to contain false, fictitious, and fraudulent statements, to wit: defendant used and caused to be used a Form DD 250 for the Department of Defense and the United States Air Force which certified that contract specifications for contract number F09603–89–G–0051–0063 had been fully performed, when in truth and fact as the defendant well knew, said contract specifications had not been performed as required by contract, in violation of Title 18, United States Code, Section 1001 and Section 2.

ment or causing a false document to be used in violation 18 U.S.C. § 1001 and 18 U.S.C. § 2. In order to uphold an aiding and abetting charge the Government must prove "that a substantive offense was committed, that the defendant associated himself with the criminal venture, and that he committed some act which furthered the crime." *United States v. Hamblin,* 911 F.2d 551, 557 (11th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 2241, 114 L.Ed.2d 482 (1991).

■ The first issue is whether a § 1001 violation was committed. The elements of a Section 1001 offense are: "(1) statement, (2) falsity, (3) materiality, (4) specific intent and (5) agency jurisdiction." *United States v. Godinez,* 922 F.2d 752, 755 (11th Cir.1991). Defendant argues that the Government did not prove the second and fourth elements.

■ Defendant first contends that the DD 250 was not false when submitted to the QAR. The Court is willing to concede that when the DD 250 was presented to the QAR no explicit representation concerning compliance was being made. The Government also argues, however, that the false DD 250 also was used to obtain payment. Thus, even if no false statement was made when the DD 250 was presented to the QAR, a false document certainly was made when he certified that the contract specifications had been met. Cannon admitted to Agent Phillips that MIL–T–9046 titanium was used in the production of armor plating for contract 0063. Thus, the evidence established that the DD 250 was false when it was submitted for payment.

■ The next issue, which concerns intent, is whether the Defendant associated himself with a criminal venture. In order to prove association the evidence must show that the defendant shared the criminal intent necessary to commit the substantive offense. *United States v. Longoria,* 569 F.2d 422 (5th Cir.1978) *(citing United States v. Smith,* 546 F.2d 1275 (5th Cir. 1977). Evidence that a "defendant voluntarily gives false information or participates in a plan such that it is *foreseeable* that false information will be used in state-

ments made to the government agency in order to further the plan", *United States v. Beck,* 615 F.2d 441, 453 (7th Cir.1980) (emphasis added), is sufficient to sustain a conviction for aiding and abetting. *Id.; accord, United States v. Austin,* 585 F.2d 1271 (5th Cir.1978). Therefore, the intent requirement in a § 1001 prosecution is satisfied if the defendant knows that success of a scheme is dependent on misrepresentations to and concealment from a government agency. *Beck,* 615 F.2d at 453 *(citing United States v. Lozano,* 511 F.2d 1, 5 (7th Cir.), *cert. denied,* 423 U.S. 850, 96 S.Ct. 94, 46 L.Ed.2d 74 (1975)). Furthermore, "[p]ersonal knowledge of the false information also satisfies the intent requirement." *Beck,* 615 F.2d at 453 (citation omitted).

In *Lozano,* the defendant was convicted for aiding and abetting an illegal alien in filing a document with the INS, which concealed, in violation of 18 U.S.C. § 1001, that she had married his co-defendant in order to obtain permanent alien resident status. The Seventh Circuit held that the evidence that the alien was a boarder at the defendant's home, that he put her in touch with his co-defendant and that he was active in arranging the marriage ceremony showed his intentional participation in the § 1001 violation and was sufficient to sustain his conviction because it was "easily foreseeable", *Lozano,* at 5, that the alien would inform the INS of her marriage while concealing its true nature and that such concealment was essential to the success of the scheme.

Additionally, in *Austin* the defendant checking account holder was convicted of aiding and abetting bank officers in misapplying FDIC-insured bank funds, making false entries in the banks books and reports and concealing material facts about the banks's condition from the FDIC. The defendant wrote a number of worthless checks, which the bank officers covered with bank funds. The bank officers used various methods to prevent the FDIC examiners from discovering the overdrawn condition of the defendant's account. The former Fifth Circuit held that the account

holder's culpability for making the false entries "emanate[d] from his knowing participation in the check writing scheme ... the false entries and concealments were *natural consequences* of this scheme." *Id.* at 1277 (emphasis added).

The evidence in the present case is similar to the evidence in both *Austin* and *Lozano* because the filing of a false DD 250 to cover the substitution of materials was "easily foreseeable," and a "natural consequence" of the scheme to substitute non-specified materials and essential to its success. Defendant ordered MIL–T–9046 for contract 0063 knowing that a DD 250 eventually would be submitted to the Government. Furthermore, Agent Phillips testified that when she asked Defendant what he meant when he referred to what happened at Space Age he said "what's in it for me," a statement from which the jury could infer intent. Finally, when Agent Phillips asked Cannon how he got the substitution of material past the QAR, he told her he altered documents.[9] This testimony buttresses the inference that Cannon knowingly and wilfully caused the false document to be made or used.

■■ The final issue is whether Cannon participated in the criminal venture. In order to prove participation the evidence must establish that the defendant engaged in affirmative conduct, that is, that he "committed an overt act designed to aid in the success of the venture." *Longoria,* 569 F.2d at 425 (5th Cir.1978). Proof of negative acquiescence is insufficient. *Id.* "A culpable aider and abettor, [however], need not perform the substantive offense, need not fully know all its details, and need not even be present". *United States v. Pope,* 747 F.2d 632, 665 (11th Cir.1984) (footnotes omitted).

■■ Defendant argues that he cannot be connected to the false document because he neither prepared nor signed the DD 250.

The Government, however, does not have to prove that Cannon actually prepared the false document, *Beck,* 615 F.2d at 453; *accord, Austin, supra,* or that Cannon even knew that the DD 250 would be filed. *Beck,* 615 F.2d at 453. Furthermore, in a prosecution under the third clause of § 1001, the Government does not have to prove that Cannon or those he aided and abetted actually made the false statement. *See United States v. Lanier,* 578 F.2d 1246, 1250 (8th Cir.) (conviction upheld where defendant employed forms compiled by state officials and defendant knew that such forms reflected false bank deposits), *cert. denied,* 439 U.S. 856, 99 S.Ct. 169, 58 L.Ed.2d 163 (1978).

■■ Defendant also argues that Cannon could not have caused a false document to be made because Kerstetter provided Haas with an inspection sheet that indicated that 6AL4V titanium, which includes both ballistically tested and non-ballistically tested titanium, had been used. Therefore, Defendant argues, since the designation on the inspection sheet is literally true, Cannon did not cause the false document to be made. Haas, however, testified that he did not rely on the inspection sheet when signing the DD 250. Rather, he noted the generic titanium designation and checked other documents to certify that the required titanium had been used. Although Haas' credibility was damaged on cross-examination and by Agent Phillips' testimony concerning the documents that were in the inspection file at the time the search warrant was executed, the "credibility of witnesses is to be determined by the jury even where strong impeaching testimony is presented." *United States v. Miles,* 472 F.2d 1145, 1146–47, (8th Cir.), *cert. denied,* 412 U.S. 907, 93 S.Ct. 2299, 36 L.Ed.2d 972 (1973). Moreover, even if Cannon did not cause the document to be made, he caused it to be used because it was submitted for payment because he ordered

---

**9.** Defendant points out that the Government never produced an altered document to support this testimony. Haas, however, testified that he never saw the documents present in contract number 0063's inspection file when it was seized. Rather, he stated that he saw documents that attested to usage of MIL–T–46077 titanium. The Court, however, concludes that even if testimony concerning the alteration of documents were completely discounted, there still would be sufficient evidence to prove intent.

the non-conforming titanium. Therefore, there was evidence that supported the reasonable inference that Cannon participated in the criminal venture.

■■■■ The Government's failure to prosecute or to obtain a prior conviction of a principal, although strange, does not preclude the conviction of an aider and abettor as long as the culpability of the principal is proven. *United States v. Musgrave*, 483 F.2d 327, 332–33 (5th Cir.1973). Jack Kerstetter's name was mentioned time and time again during the trial and his initials appeared on incriminating documents. He was also the person who presented the DD 250 to the QAR. A jury could assume that any ill-gotten profits of the scheme to defraud would profit the owner of the company more than a mere employee. In fact, the record is devoid of any evidence that Cannon defrauded his employer and operated this scheme for his personal benefit. Therefore, the record supports the inference that Jack Kerstetter was the culpable principal. Consequently, Jody Cannon's conviction for aiding and abetting a violation of § 1001 can stand.

The Court doubts that the evidence against Cannon would have been sufficient if the aiding and abetting theory of liability had not been submitted to the jury [10], especially in light of *United States v. Dick*, 744 F.2d 546 (7th Cir.1984). In *Dick* the defendant was charged with a violation of § 1001. The appellate court stated that the evidence, which showed that the defendant knew that the statements were false and presumably necessary to further the scheme to defraud, was not sufficient to sustain his conviction because the Government did not show that the defendant participated in making them or that he was aware that they were made. In dicta, however, the circuit court stated that if the Government had argued an aiding and abetting theory of liability the conviction would have been upheld.

In the instant action there was no direct evidence that Cannon actually submitted the document to the Air Force for payment. Moreover, the only evidence that Cannon caused the false document to be made, aside from ordering the non-conforming titanium, was Agent Phillips' testimony that Cannon said he had altered documents to get the substitution past the QAR. Although the Government did not produce any altered documents, Haas testified that he was provided the proper certification for the DD 250. The question then becomes whether it is a reasonable inference that Haas saw a document altered by Cannon, which caused him to certify that contract specifications had been met. The Court, however, need not decide this issue since the evidence is sufficient to sustain Defendant's conviction under an aiding and abetting theory of liability.

## II. MOTION FOR A NEW TRIAL

Defendant argues that a new trial should be granted based on this Court's exclusion of certain evidence, the admission of irrelevant and prejudicial evidence and prosecutorial misconduct. The Court addressed these issues during the trial and is not persuaded that its trial rulings were incorrect. The Court, however, will address Defendant's arguments concerning prosecutorial misconduct during closing argument.

First, Defendant argues that Assistant United States Attorney ("AUSA") Duke referred to an unrelated alleged crime and thus improperly put his character in issue when she made the argument that he only spoke to the Agent Phillips "in order to get himself out of a deep crack," (T5:159), like "every child who has ever been caught doing something wrong has said." (Id.)

---

**10.** The Court realizes that the verdict did not refer to 18 U.S.C. § 2. Nevertheless, the dispositive issue is whether the Government presented an aiding and abetting theory of liability to the jury. *United States v. Dick*, 744 F.2d 546, 554 (7th Cir.1984). The Court further notes that the presence of the conspiracy count does not affect Cannon's aiding and abetting liability on the § 1001 offense even if it was committed pursu-

ant to the conspiracy. *Nye & Nissen v. United States*, 336 U.S. 613, 620, 69 S.Ct. 766, 770, 93 L.Ed. 919 (1949). As in *Nye & Nissen* the jury in the instant case was not charged on co-conspirator liability. Nonetheless, the jury was instructed on the "equally valid theory", *id.* 336 U.S. at 618, 69 S.Ct. at 769, of aiding and abetting liability.

These comments were made in response to defense counsel's argument that Cannon provided the Government with information with no ulterior motive. (T3:129, 140). Defendant immediately moved for a mistrial, which this Court denied. (T5:162). The Court then gave a cautionary instruction. (T5:163).

Defendant contends that AUSA Duke immediately thereafter made the same argument. The Court disagrees. A careful reading of AUSA Duke's statements shows that she shifted the direction of her prior statements from the argument that Cannon only provided information to the Government to get himself out of trouble relative to the search warrant being executed at Falcon Manufacturing, to an argument rebutting defense counsel's argument that Kerstetter was the only person guilty of submitting false DD 250s. (See T5:138, 139, 163). Thus, the Court does not view AUSA Duke's statements after the cautionary instruction as referring to any alleged wrongdoing related to the search warrant executed at Falcon.

 Second, Defendant objects to the prosecutor's statements concerning the protection of military personnel. AUSA Duke made her comments in response to defense counsel's characterization of the prosecution of the Defendant as "mean-spirited." (T5:130, 142, 143). The Eleventh Circuit has held that a prosecutor has a right to respond to a defendant's attack on the Government. *United States v. Eley*, 723 F.2d 1522, 1526 (11th Cir.1984). Furthermore, the lack of prejudice to the Defendant is evidenced by his acquittal on three counts involving contracts for armor plating. *See United States v. Rodriquez*, 765 F.2d 1546, 1560 (11th Cir.1985).

 Finally, in his reply brief Defendant argued that AUSA Duke made an improper argument when she told the jury that Jack Kerstetter was not immune from prosecution and that, although "he is uncharged today, [t]hat does not mean he won't be charged tomorrow." (T5:145). Defendant contends that the statements were misleading in light of Howard I. Wooden's Affidavit, which states that Jack

Kerstetter told him that Denmark Groover, [Kerstetter's attorney], told him before Cannon's trial that he [Kerstetter] would not be prosecuted. In its response the Government provided the Court with a letter from Mr. Groover to AUSA Duke in which he states that she never told him that Kerstetter would not be indicted. (See Exhibit "A" to Government's Supplemental Response).

Even if, however, the Government never had any intention of prosecuting Kerstetter, the Court concludes that the remarks would be misleading but not prejudicial. As stated above, Cannon's acquittal on three counts of the indictment negates any alleged prejudice. Additionally, Cannon's guilt does not hinge on whether or not Kerstetter eventually is indicted. Rather, it hinges on the evidence presented at trial. The Court concedes that the remarks probably eroded the potential for a jury nullification, but that does not make them prejudicial. Therefore, the Court concludes that the alleged misconduct was not so pronounced and persistent that it permeated the entire atmosphere of the trial. *United States v. Herring*, 955 F.2d 703 (11th Cir. 1992).

### CONCLUSION

Accordingly, for the reasons stated above, Defendant's motions are DENIED.

SO ORDERED.